162 *B. G. POOL, and O. H. LUFBURROW, plaintiffs in error, *v.* P. R. and B. J. LEWIS, defendants in error.

(Atlanta, June Term, 1870.)

1. USE OF A WATER COURSE—RIGHT TO REASONABLE USE AND DETENTION—RETURN TO NATURAL CHANNEL. —The owner of a mill whose dam and machinery are suited to the size and capacity of the stream, has a right to the reasonable use of the water to propel his machinery, but he must detain it no longer than is necessary for its profitable enjoyment, and he must return it to its natural channel before it passes upon the land of the proprietor below.

2. SAME—REASONABLE DETENTION—QUESTION FOR JURY.*—What is a reasonable detention is a question for the jury, in view of all the facts in the case, taking into account the nature and use of the machinery, and the use of the water necessary to its profitable employment. If the owner detains the water no longer than is necessary for its profitable use, he is not liable in damages to the proprietor below.

3. SAME—VERBAL AGREEMENT NOT TO STOP USUAL FLOW—SALE TO INNOCENT PURCHASER—ESTOPPEL.— Where the owner of an iron furnace upon a stream claims that the owner of a mill above his works had bound himself by verbal contract, that he would never stop the usual and constant flow of the water in the channel of the stream, and the owner of the furnace, after the death of the owner of the mill, stood by and saw the mill sold by the administrator of the deceased, to an innocent purchaser, and gave no notice of the verbal agreement between himself and the deceased, he is estopped from setting up the verbal agreement against the purchaser who invested his money without notice of it. And the parties stand upon their respective rights under the general law governing riparian proprietors in the use of the water in the stream.

Use of Water Courses. Before Judge Parrott. Bartow Superior Court. March Term, 1870.

Pool and O. H. Lufburrow averred in their action on the case, and that they, for many years, had owned certain ironworks on Stump creek, in said county, and had a right to use the water of said creek for said works, but that Pickens R. and Boyles J. Lewis, knowing that, and contriving fraudulently to injure them by depriving them of the use of said water for that purpose as beneficially, as they had before done, on the 13th of September, 1867 and since, erected dams and gates in and across said creek, and kept them there for three months last past, and thereby prevented the water from flowing in its usual course to their iron-works, took

*USE OF WATER COURSE—REASONABLE DETENTION— QUESTION FOR JURY.—"The measure of each owner's rights in the use of the water is the reasonableness of the use. For the ascertainment of what is a reasonable use, no definite rule is, or can be, laid down. Whether the use is reasonable or not must depend upon the character and size of the stream, the uses to which it is subservient, and other circumstances of the particular case, and in an action of this kind the question is therefore, one of fact to be determined by the jury, and not one of law for the court. Pool *v.* Lewis, 41 Ga. 162." White *v.* East Lake Land Co., 96 Ga. 417, 23 S. E. Rep. 393.

away their necessary supply of water, and thereby, during said term, prevented them from enjoying the profits of said works, and destroying certain parts of said works fully described, etc., etc. The defendants pleaded the general issue and Statute of Limitations.

They testified that the water had been stopped from flowing down the stream, by cutting it off at defendant's mills, and they introduced much evidence as to the damages done them. Besides the claim to have the water run in its accustomed channel, they attempted to show a parol contract, by which Dr. Lewis, the father of defendants, had bound himself and his privies, never to obstruct the water. Some witnesses testified to conversations of Dr. Lewis, deceased, to prove that contract. On the other hand, it was shown that he had been asked once to give a written promise to that effect, and would not, and that all he had said was, that he would so use the water above, as to do the owners below as little harm as possible, and to that end had made a side gate or race to let the water escape, etc.

For the defendants it was shown that the mill was built in 1845, and had been run ever since, and that a forge was put up about five hundred yards below it in 1849, Dr. Lewis owning the mill and part of the forge, and that the furnace now stands where the forge did stand. It was also in evidence that the creek was very low in summer, and that it had been usual to stop the furnace in the summer, lay in stock and then run it in winter when the stream was higher. All the stopping complained of by plaintiffs occurred in summer, and one who had worked for them testified that the creek would not have furnished water sufficient for the furnace during summer had the mill not been above it at all. Both defendants testified that they had never stopped the water except once or twice, and then to repair their machinery, and use it as carefully as they could to prevent damage to defendants. Besides, it was shown that they bought the mill at public outcry, at sale of their father's property, that Pool was present and gave no notice of any contract with their father as to the use of said water, and that they had no knowledge of such contract.

The damage was caused by the chilling of plaintiffs' furnace, and much evidence was used pro and con, as to the measure of damages, but the measure of damages is unimportant here, considering the result of the case.

The argument being concluded, the Court was asked by the parties to charge the jury as follows: (The words not italicised are those of the requests as asked and given, those italicised are the words added by the Court in charging the jury.)

Requests of plaintiffs' counsel:

1st. The plaintiffs have the right to have the advantage of the flow of the water in the creek on their own land, without

diminution or alteration. And if defendants diminished the flow of the water on the lands of the plaintiffs to such an extent as to injure the plaintiffs' property, the plaintiffs are entitled to recover the amount of that injury. *Diminish as here used must mean, that the water is taken out of the stream and not allowed to reach plaintiffs' furnace at all.*

2d. The defendants have the legal right to use the water as it flows in the creek, and a right to the reasonable use of it to drive the machinery of their mills, but what is a reasonable use of it depends on circumstances. They cannot so use, detain or diminish the quantity of water as it is wont to flow in the natural channel of the stream, as to destroy the property of the plaintiffs, or any part thereof. And if the evidence shows that the defendants did so stop, detain or diminish the quantity of water in the natural channel of the stream, as to chill the furnace of the plaintiffs, and thereby to destroy their hearth, then they are entitled to recover all the damages which the evidence shows they have sustained by the conduct of the defendants. *If this stoppage was in the legal use of the water, and for a reasonable time only, they would not be entitled to recover.*

3d. The defendants are entitled to a reasonable use of the water for domestic, agricultural and manufacturing purposes, provided, that in making such use they do not work a material injury to the plaintiffs owning property below, but if the defendants have so used or stopped the water as to materially injure the plaintiffs, then the plaintiffs are entitled to recover *damages sufficient to compensate them for the injury they have sustained; provided said stoppage was for an unreasonable time, or in an unreasonable manner.*

4th. It is true that the defendants have the right to use the water in the stream as it was wont to flow, but they have no right to use it in such a manner as to alter or change the current or stream to the injury of the plaintiffs below. The principle of the Common Law is, that a man must so use his own as not to injure others. And if the defendants did so use the water on their land as to injure the property of plaintiffs, your verdict should be for a sum sufficient to cover the amount of injury done. *"If said use was illegal, or the stoppage for an unreasonable time, it is illegal to interfere with the legal right of either owner."*

5th. Running water while on land belongs to the owner of it, but he has no power to divert it from its usual channel, nor can he so use it as to interfere with the enjoyment of it by the next owner, and if the defendants have so used the water while on their lands as to injure plaintiffs, your verdict should be for a verdict equal to the injury done—*provided said use was unreasonable.*

6th. The defendants stand in no better position than Dr. Lewis would were he alive and defendant in this case, as

they purchased only his right—*unless the plaintiffs had an equitable right in the property sold to defendants, of which they had no notice, in which case they obtained the legal title thereto, as Dr. Lewis had, free from the equitable interest.*

Requests of defendants' counsel:

1st. Whether the defendants used the water in an unreasonable manner, or detained it for an unreasonable time, is a question of fact to be decided by the jury from the evidence in the case; the reasonableness of the detention must be determined by the jury from the circumstances in the case.

2d. The right claimed by Pool, that Lewis shall use the dam and water on his own land for the benefit of Pool, is a claim of a sale to Pool by Lewis, of an interest in or concerning *Lewis's land, and a contract of this sort is not binding on Lewis, unless in writing, signed by Lewis, or some one authorized to sign it.

3d. The right claimed by Pool, that Lewis shall use the mill in a particular way, cannot exist and be evidence by parol alone; to establish such a right against the defendants, if they be innocent purchasers without notice, there must be evidence in writing. Parol evidence of such a contract made between Dr. Lewis and Pool, not brought home to the knowledge of defendants, cannot affect them.

4th. If there was a parol contract between Pool and Dr. Lewis, that Pool was to have the natural flow of the water in the creek unobstructed, yet if Dr. Lewis violated that contract and kept up his dam and mill until they were sold to defendants without notice of any such parol contract, Pool cannot enforce any such contract against these defendants, and they would not be liable under any such circumstances, for any breach of such contract to which they were not parties, and of which they had no notice. And under these circumstances, defendants would not be liable to damages, unless they detained the water an unreasonable length of time. The Court further charged upon his own motion, section 2201 of the Code, (for which see opinion,) and said this is the law of the land, by which the jury are to be governed in this case. That part of the law which refers to diverting the water from its natural channel, means that it shall not be changed or turned in a different channel, so that it shall not leave the land of the next owner below, and cause it to flow in an unusual channel on the land of the owner below, and thus injure the water privileges of the owner below, or that it shall enter the land of the owner below in a different unnatural or unusual place. That part that refers to the use or adulteration of the water, refers to such use or adulteration as renders the water unfit for ordinary use by those below; such as running sewers into streams of water used for drinking, culinary or other domestic purposes, throwing night-soil, refuse from slaughter pens, or

other nauseous matter into the stream, so as to interfere with an enjoyment of the water *by those living below, or by using it in tanning, washing, brewing, or any other use that interferes with the enjoyment of it below. This section refers more especially to injuries to the water, as water for ordinary domestic purposes, other than its uses as a stream or body for manufacturing purposes.

Section 2205 of the Code, reads thus: "The owner of a stream not navigable is entitled to the same exclusive possession thereof as he has to any other part of his land. And the Legislature has no power to interfere with him in its lawful use for the benefit of those above or below him, except to restrain a nuisance." This section refers, most probably, to water as a body or stream to be used for the purpose of propelling machinery. It will be observed that the owner cannot be compelled to desist from the lawful use of the stream on his own land, nor interfere with its lawful use by any law to be passed by the Legislature. Have the defendants used this stream lawfully or unlawfully? If they have only appropriated it to lawful use to run their mills, they have not interfered with the legal rights of plaintiff, and no recovery can be had against them.

It is insisted by the plaintiffs that there was a parol contract between plaintiffs and Dr. Lewis, one of the prior owners of this mill property, that the water at his mill should never be obstructed so as to injure the furnace of plaintiffs below the mill. This is a right incidental to land, and the same sort of contract that would convey land, would be required to confer this right. If this contract was not reduced to writing, it would not carry the right, unless there was a consideration paid therefor, and would not be binding on Dr. Lewis, if he were in life, and the party defendant in this case.

The jury found for the defendants. The plaintiffs moved for a new trial upon the ground that the Court erred in adding the italicised words to their requests to charge the jury, and in each part of his charge as given, and because the verdict was contrary to the law and evidence. The Court refused a new trial, and error is assigned on each of said grounds.

*(In this case, counsel asked for an extension of time allowed for the argument of causes, but it was refused.)

W. T. Wofford. Warren Akin, for plaintiffs in error.

Abda Johnson, by W. H. Dabney. John W. Wofford, and D. A. Walker, for defendants.

By the Court.—BROWN, C. J., delivering the opinion.

The controlling question in the case is, had the defendants the right to use the water in the stream, as they did use it, for the purpose of running their mill, located a short distance above the furnace of the plaintiffs. Judge Parrott, who presided on the trial, left it to the jury to determine whether the use and detention of the water, by the defendants, were reason-

able and necessary, under the circumstances of the case made by the evidence. We see no error in this.

In Washburn's Easements and Servitudes, (side page 267,) the rule is laid down as follows: "The question of a reasonable use of the water by the mill-owner above, depending as it must, upon the size of the stream, as well as the business to which it is subservient; and on the every-varying circumstances of each particular case, must be determined by the jury and not by the Court." It seems to us that a correct rule, as to the use of the water by the owner of a mill on a stream, is found on side page 253 of the same book, in the following language: "But in doing so, he must use the water in a reasonable and proper manner, in propelling and operating a mill, suited and adapted in its magnitude to the size and capacity of the stream and the quantity of water flowing therein. Nor could he detain the water an unreasonable length of time, nor discharge it in such excessive quantity that it would run to waste. He must use the water in such a way and manner that every riparian proprietor at points further down the stream, will have the use and enjoyment of it, substantially, according to its natural flow, subject, however, to such disturbance and interruption as are necessary and unavoidable, in and by the reasonable and proper use of it *for the operating of a mill of suitable magnitude, adapted and appropriate to the size and capacity of the stream and quantity of water flowing therein."

In the case of Hetrick v. Deuchler, 6 Pennsylvania Reports, 32, the plaintiff's works were an ancient grist-mill, the defendant's a modern saw-mill, on the same stream. In operating his mill, the defendant sometimes detained the water from three to five days or more, and, besides using the water for driving his mill, applied it to irrigating his land. Besides this, he at times let out so much water from his own as to flow the plaintiff's mill. The Court were urged to rule that such a detention must necessarily be objectionable, as being a violation of the plaintiff's rights. But they declined so to do, and submitted the question to the jury, whether it was a reasonable detention of the water or not. If he detained it no longer than was necessary for his proper enjoyment of it, the plaintiff cannot recover, unless, as the Court added in their instructions, the defendant detained the water vexatiously or wantonly. And the whole Court, in commenting upon and approving those instructions, refers as a test of what may be done, to the "reasonableness of the detention depending, as it must, on the nature and size of the stream, as well as the business to which it is subservient, and on the ever-varying circumstances of each particular case:" See, also, on this point, Mabie v. Matteson, 17 Wis., 1; Springfield v. Harris, 4 Allen, 496. A large proportion of the cases,

where conflicting rights are set up by such mill-owners to use of water, will be found to have been determined by the application of this broad rule, of what is a reasonable use, in view of the circumstances of each particular case: See Wash. E. and S., side page, 266, and a number of cases there cited.

Taking this to be the correct rule, and applying it to the evidence in this case, we are satisfied these plaintiffs had no cause of action. We think the defendants made only such reasonable use of the water under the circumstances of this case, as they had the legal right to make. The water was low in the stream, and the furnace was being run, as is shown, contrary to the practice of judicious operators, on the same stream, *under like circumstances, at a time when true economy required that it be stopped and that the time be appropriated to laying in stock for use, till the rise in the stream, resulting from the fall rains, after which there was sufficient water for all.

At any rate, the defendants who first got control of the water when it was too weak to supply all, had the right to detain it a reasonable time for necessary use at their mill. The Court submitted the question of the reasonableness or unreasonableness of the use made of the water, by the defendants, to the jury, and they found in favor of the defendants. And, after a careful review of the testimony given in on the trial, we are satisfied they found correctly. Section 2205 of the Revised Code declares that, "the owner of a stream not navigable, is entitled to the same exclusive possession thereof as he has of any other part of his land, and the Legislature has no power to compel or interfere with him in its lawful use for the benefit of those above or below him on the stream, except to restrain nuisances." `Construing this section with sections 2201 and 2967, we think · they do not change the common law rule already laid down. They secure to the owner of the land over which the stream passes the legal use of it, for the purpose of propelling such machinery as is suited to the size and capacity of the stream·; provided, the water is not obstructed for an unreasonable time, and is not diverted from its natural channel when it passes to the lands of the next proprietor.

2. But it is claimed that the evidence showed that there was a verbal contract or understanding, between Pool, one of the plaintiffs, and Dr. Lewis, who built the mill, and was a partner in the furnace when built, and for several years afterwards, that the water should never be obstructed at the mill, but should flow constantly in the channel of the stream to the furnace. It is not pretended that this license or contract, or whatever it may have been, was in writing. And the Court below ruled that the plaintiffs could not have the benefit of it, because the right claimed to have been conveyed

by it, which was a right in the plaintiffs to prohibit the detention *of the water at the mill for such reasonable time as the law would otherwise allow, was an interest in land which could only be conveyed by writing: See Code, sec. 1940. While we are not prepared to say the Court committed error in this ruling, we do not deem it necessary to decide the question. The evidence shows . that Pool, the plaintiff, was present when the land upon which the mill is located was sold at administrator's sale, as the property of Dr. Lewis, and that he gave the bidders no notice of this parol license or contract, but permitted them to invest their money in the said property, without knowledge of the right he now seeks to set up, which existed, if at all, only in parol. Under this state of facts, we hold that Pool was estopped from afterwards setting up this parol. license or contract, to the injury of the purchasers. And the parties are left just where the law, governing in such cases, without license or contract, leaves them.

There were numerous charges asked, and exceptions to the charge as given by the Court, and his refusals to charge, upon which we are asked to pass judgment. But as the points already decided must, in our opinion, control and dispose of this litigation, we deem it unnecessary to do so.

Judgment affirmed.