## Satterfield v. Rowan.

| 83 | 187 |
| 121 | 321 |

| 83 | 187 |
| 127 | 294 |

| 83 | 187 |
| 130 | 467 |

1. The principle that the defendant may reduce the recovery for an injury resulting from his negligence by showing that the plaintiff did not exercise ordinary care to diminish or avoid the damage, does not apply where the act complained of is not a mere act of negligence, but a positive, continuous, tortious act, committed by the defendant in carrying dirt and ore from a mine and washing

it in a stream flowing through the land of both parties, and thereby producing continued adulteration of the plaintiff's water.

2. Under the code, an upper riparian owner cannot lawfully pollute or adulterate the water of the stream so as to render it unfit for use by a lower owner, without being liable for damages. The former has the right to use the water while it is on his land, but not in such manner as to deprive the next owner of the enjoyment of it; and if such use, by washing ore adulterates it, and the next owner is thereby injured, he is entitled to damages, though the stream be more useful for mining than for domestic purposes.

May 6, 1889.

Damages. Water and water-courses. Torts. Negligence. Before Judge NEEL. City court of Cartersville. September term, 1888.

Reported in the decision.

AKIN & HARRIS and A. S. JOHNSON, for plaintiff in error.

A. W. FITE and SHELBY ATTAWAY, *contra.*

SIMMONS, Justice.

Rowan sued Satterfield, alleging that on May 1st, 1884, the defendant erected a dam across a branch on the defendant's own land, which lay on the branch just above the land of plaintiff, and on said day began washing ores on said branch, and has continued to do so; that this branch runs through the land of plaintiff; that the washing of the ores rendered its waters unfit for use, the mud and dirt caused thereby making the waters of the branch dirty, filthy, etc., and has so filled the branch with mud and dirt that, in the summer season, the water ceases to run, and during said season a stench arises from the mud which is unhealthy and unpleasant; that this is the only branch or water of any kind running through his land except a small branch which only runs a portion of the year; and that the branch in question runs near his dwelling-house and through his horse-lot and fields, and before the acts of the defendant, was used by plaintiff for watering his

horses and stock and for other purposes, but that now he is compelled to get water from his well, and the excessive use thereof often exhausts the water and renders it muddy.

The defendant pleaded not guilty; also, that the use he made of the stream was reasonable and sanctioned by the usage of the country, of which usage plaintiff is and has always been aware; further, that the stream is of more use and value to the defendant and all adjacent and subjacent riparian owners for the purpose of washing ores, than it is to plaintiff and all subsequent riparian owners for the purpose to which he puts it as alleged in his declaration.

The evidence sustained the allegations made in the plaintiff's declaration, and the jury returned a verdict in favor of the plaintiff. A motion for a new trial was made on many grounds, which was overruled by the court, and the defendant excepted. The only grounds relied on in argument before us by the counsel for the plaintiff in error for a reversal of the judgment of the court below in refusing to grant a new trial, were the 1st, 6th and 9th grounds, which are as follows:

(1) That the verdict is contrary to law, evidence, etc. (6) That the court erred in charging as follows: "But the defendant, in using the water of said stream on his land for washing ore, is bound to do so in such manner as not to cause it to flow on, to and over plaintiff's land so adulterated as to injure or destroy its reasonable use by plaintiff on his land. Water may be adulterated by mixing with it any other substance or matter which renders it impure or unclean in such degree as to either impair or destroy its value." (9) The court erred in charging thus: "As to what is a reasonable manner of use may depend upon the circumstances of the case; what might be reasonable in one case might be wholly unreasonable in another. If

the stream used be in an unsettled country, and no one resides on the stream below the point of use, nor has farm or pastures thereon with cattle or live-stock, or if the stream was mainly useful to every single owner on the stream for washing ore in a mining section of country, so that such was the principal and most valuable use to which the stream could be applied by each and every owner on the stream, then it would not interfere with the enjoyment of the stream below, even if the stream were polluted or adulterated in the washing of ore."

It was contended by counsel for the plaintiff in error that the verdict was contrary to the evidence, because the evidence showed that the plaintiff could have avoided the damage to himself by the expenditure of $40 in preparing a filterer in which the water might have been filtered, so that the same would flow upon his premises free from the dirt and mud placed in it by the defendant; and he contended that if the plaintiff below was entitled to recover at all, he could only recover such an amount as he ought to have expended in filtering the water.

1. We do not think that the principle contended for by the plaintiff in error applies in a case like the one under consideration. While it is true that the defendant may reduce the recovery for an injury resulting from his negligence, by showing that the plaintiff did not exercise ordinary care to diminish or avoid the damage, yet in this case the act complained of by the plaintiff in the court below was not a mere act of negligence, but was a positive, continuous, tortious act, committed by the defendant in carrying dirt and ore from the mine and washing it in the stream, and thereby producing continued adulteration of the plaintiff's water.

This principle was decided by this court in the case of the *Athens Mfg. Co.* v. *Rucker,* 80 *Ga.* 291. In that case

the court below refused to charge the following request: "When the consequences of a present or antecedent negligence are impending, whoever can shun them by ordinary care and fails to do so, ought not, perhaps, to be heard to complain of them, whether they touch his person or his property. If, therefore, by exercise of ordinary care, the plaintiff in this case could have avoided the consequences of the defendant's negligence, if there is such negligence, and has failed to exercise such care, he cannot recover." This court sustained the action of the court below in refusing to give in charge the foregoing request, and said: "We do not think that this is a case of negligence. If this company raised their dam, thereby causing water in the creek to run over the plaintiff's land and thereby injuring and damaging him, that was an invasion of his rights, and was a positive act on the part of the defendant, and not a case of negligence. Nor was it negligence on the part of the plaintiff not to do anything to avoid the consequences of their act. Every man has the right to enjoy his property to the fullest extent, and whenever that right is invaded by another, and injury accrues to him, he is entitled to his damages therefor. The evidence fails to show that the plaintiff did anything that led to or increased this damage. He did nothing, and he had a right to do nothing; and if they invaded his rights, they were liable to him for any damages which he sustained by reason of such invasion. We think the court would have been guilty of manifest error to have given this request in charge to the jury."

2. Nor do we think that the court erred in the charges complained of in the 6th and 9th grounds of the motion. Whatever may be the decisions in other States as to the right of one riparian owner to pollute or adulterate the water of the stream before it reaches the lower and adjacent owner, we think that, under our

code, the upper owner cannot lawfully pollute or adulterate the water of the stream so as to render it unfit for use by a lower owner, without being liable for damages. The code, §2227, declares that "running water, while on land, belongs to the owner of it, but he has no power to divert it from the usual channel, nor can he so use or *adulterate* it as to interfere with the enjoyment of it by the next owner." The same principle is announced in §3018. The principle announced in these two sections is, that while the water is upon the land, it belongs to the owner of the land; yet he cannot so use or adulterate it as to interfere with the enjoyment thereof by the next owner; and if he does, he is liable in damages for so using or adulterating it.

This water belonged to Satterfield while it was on his land, and he had a right to use it. He did not have the right, under this section of the code, to use it in such manner as to deprive the next owner of the enjoyment of it. The evidence in the record shows that he did so use it as to deprive Rowan, the next owner, of its use and enjoyment. Rowan was entitled to have the water flow upon his land from Satterfield's land in its natural state, free from the mud, dirt or other adulteration put therein by Satterfield; and if Satterfield adulterated it by using it for washing his ore, and Rowan, the next owner, was injured thereby, he is entitled to damages therefor; and in our opinion he is entitled to such damages whether the stream of water was more useful for the purpose of mining than it was for domestic purposes, and this is what we understand the meaning of the court below to be. *Judgment affirmed.*