PRICE *et al.* v. HIGH SHOALS MANUFACTURING CO.

1. Upon the trial of a suit by one riparian proprietor against an upper riparian proprietor, for damages because of the unreasonable diminution and detention of the water in the stream, evidence tending to show that the defendant was using water from the stream sufficient to propel machinery not adapted to the size and capacity of the stream, was admissible.

2. In a suit of the kind named in the preceding headnote, where the damages claimed were loss of profits in operating a grist and flour mill.

from a specified time, testimony offered by a witness for the plaintiffs, "that he had heard people say that they had quit carrying their grinding to plaintiffs' mill, because they could not get it ground on account of low water," it not appearing that the statements referred to were made since such time, was properly excluded.

3. Where one riparian proprietor continuously diminishes or detains the water in the stream unreasonably with reference to the rights of another riparian proprietor, who is damaged thereby, there is an illegal invasion of the property rights of the latter, and he is under no legal obligation to exercise ordinary care to avoid or lessen such damages.

4. Where there is such an illegal invasion of the property rights of another as that referred to in the preceding headnote, the injured party is entitled to nominal damages, even though he shows no special damage.

5. The inaccuracies in the charge referred to in the 5th division of the opinion were not likely to mislead the jury, in view of the entire charge.

Argued June 15, 1908.—Decided February 27, 1909.

Action for damages. Before Judge Lewis. Walton superior court. September 2, 1907.

*Cobb & Erwin, Napier & Cox,* and *George C. Thomas,* for plaintiffs.

*Hal G. Nowell* and *Foster & Foster,* for defendant.

HOLDEN, J. The plaintiffs, under a bond for title, with part of the purchase-money paid, were in possession of property on which was situated a mill on the Apalachee river. They brought suit for damages against the defendant, which owns property on the river above the plaintiffs' property, and operates machinery by means of the power derived from the water of the stream. They alleged that they had lost custom of patrons of their mill, by reason of being unable to operate the same with any regularity, on account of the wrongful conduct of the defendant. This conduct was alleged to consist in the erection, in 1903, of a reservoir or storage-dam on the river above the plaintiffs' mill, creating a pond of water covering a considerable area, which caused the evaporation and absorption of the water, thereby diminishing the supply to which the plaintiffs were entitled; that gates were placed in this dam by the defendant, which were closed at six o'clock p. m. every day, thereby shutting off the flow of the water until they were opened next morning, by reason of which a sufficient amount of water to enable the plaintiffs to operate their mill did not

reach the mill until twelve or one o'clock, and that the bed of the stream between the plaintiffs' mill and the defendant's dam, owing to the fact of it containing only a small quantity of water while the gates were shut down, became dry and absorbed a quantity of water when the flow was turned on in the morning. The plaintiffs contended that the use and detention of water by the defendant was unreasonable and entirely beyond the size and capacity of the stream, and was resorted to by the defendant for the purpose of propelling machinery of a magnitude twice as large as was adapted to the size and capacity of the stream, and that the obstruction, detention, retardation, and diminution of the water were subversive of the rights of the plaintiffs and caused them damage in the sum of $1,000 per annum. The defendant filed an answer, admitting the construction of the dam and the shutting down of the gates, but denying that the shutting down of the gates entirely cut off the flow of the water, or rendered it impossible for the plaintiffs to operate their mill. Upon the trial a verdict was rendered in favor of the defendant. The plaintiffs moved for a new trial, and to the order denying the same they excepted.

1. One assignment of error in the motion for a new trial is as follows: "The court erred in ruling out the testimony of plaintiffs' witness Hayne, 'They put in 5,000 more spindles after the new dam was built,' the purpose of which was to show that the amount of machinery being propelled was greater than the capacity of the stream, and necessarily took more water than the natural stream afforded; plaintiffs' counsel informing the court that he intended to show that the defendant doubled its machinery, and was running double the amount of machinery with the water from the new dam that it did before the dam was built, and that the machinery in the mill, before this addition, required all the water power of the stream." Under a proper construction of the Civil Code, §§3057, 3802, 3879, every riparian owner is entitled to a reasonable use of the water in the stream. If the general rule that each riparian owner could not in any way interrupt or diminish the flow of the stream were strictly followed, the water would be of but little practical use to any proprietor, and the enforcement of such rule would deny, rather than grant, the use thereof. Every riparian owner is entitled to a reasonable use of the water. Every such proprietor is also entitled to have the stream pass over his

land according to its natural flow, subject to such disturbances, interruptions, and diminutions as may be necessary and unavoidable on account of the reasonable and proper use of it by other riparian proprietors. Riparian proprietors have a common right in the waters of the stream, and the necessities of the business of one can not be the standard of the rights of another, but each is entitled to a reasonable use of the water with respect to the rights of others. What is a reasonable use is a question for the jury in view of all the facts in the case, taking into consideration the nature and use of the machinery, the quantity of water used in its operation, the use to which the stream can be applied, the velocity of its current, the character and size of the watercourse, and the varying circumstances of each case. In the case of *Pool* v. *Lewis,* 41 *Ga.* 162 (5 Am. R. 526), it was ruled: "The owner of a mill, whose dam and machinery are suited to the size and capacity of the stream, has the right to the reasonable use of the water to propel his machinery, but he must detain it no longer than is necessary for its profitable enjoyment, and he must return it to its natural channel before it passes upon the land of the proprietor below." See 2 Farnham on Water and Water Rights, §476, p. 1612, §475, pp. 1608-9; Gould on Waters (3d ed.), §218, pp. 427-8; 30 Am. & Eng. Enc. Law, 372-3. Under the facts of this case, we think the court committed error in ruling out the testimony of plaintiffs' witness that the defendant put in 5000 more spindles after the new dam was built. In connection with the other testimony in the case, this testimony was admissible for the purpose of illustrating the question as to whether or not the defendant's machinery was adapted to the capacity of the stream, and therefore of throwing light on the question as to whether or not it was making a reasonable use of the water.

2. Another assignment of error is as follows: "That the court erred in ruling out the testimony of plaintiffs' witness Wagner, that he had heard people say that they had quit carrying their grinding to plaintiffs' mill because they could not get it ground on account of low water." The plaintiffs sued for damages which they alleged occurred since the erection of a new dam by the defendant in 1903. It does not appear that the statements referred to were made since the new dam was erected; and for this, if for no other reason, there was no error in excluding the testimony.

3. Another assignment of error is that the court committed error in charging the jury that the plaintiffs could not recover, even if they were injured by the conduct of the defendant, if the plaintiffs could have avoided the injury by the exercise of ordinary care and diligence; and in further charging, "It is a question of fact whether ordinary care and diligence required them to build a storage dam, or adopt any other plan to protect them from loss. This is a fixed rule applicable to all cases of similar character." The Civil Code, §3802, provides: "Where by a breach of contract or negligence one is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence; but this does not apply in cases of positive and continuous torts." The conduct of the defendant complained of in this case is not a breach of contract or negligence. It is a positive and continuous tort. We do not think the rule of law announced by the court in the charge complained of was applicable in this case. In the case of *Athens Mfg. Co.* v. *Rucker,* 80 *Ga.* 291 (4 S. E. 885), it was held: "Whenever the right to enjoy one's property to its fullest extent is invaded and injury arises therefrom, he may recover any damages sustained by reason of such invasion, nor is he bound to do anything to avoid the consequences thereof." On page 295 the court uses this language: "We do not think that this is a case of negligence. If this company raised their dam, thereby causing water in the creek to run over the plaintiff's land, and thereby injuring and damaging him, that was an invasion of his rights, and was a positive act on the part of the defendant, and not a case of negligence; nor was it negligence on the part of the plaintiff not to do anything to avoid the consequences of their act. Every man has the right to enjoy his property to the fullest extent; and whenever that right is invaded by another and injury accrues to him, he is entitled to his damages therefor. The evidence fails to show that the plaintiff did anything that led to or increased this damage. He did nothing, and he had a right to do nothing; and if they invaded his rights, they were liable to him for any damages which he sustained by reason of such invasion." In the case of *Satterfield* v. *Rowan,* 83 *Ga.* 187 (9 S. E. 677), the following ruling was made: "The principle that the defendant may reduce the recovery for an injury resulting from his negligence, by showing that the plaintiff did not exercise ordinary care

to diminish or avoid the damage, does not apply where the act complained of is not a mere act of negligence, but a positive, continuous, tortious act, committed by the defendant in carrying dirt and ore from a mine and washing it in a stream flowing through the land of both parties, and thereby producing continued adulteration of the plaintiff's' water." Riparian proprietors have no title to the water which flows over their land, but are entitled to a reasonable use thereof, and "they may insist that their right to thus use the water shall be regarded and protected as property." Gould on Waters, §204, p. 395. In 2 Farnham on Water and Water Rights, §462, pp. 1565, 1566, it is said: "The right to have a natural watercourse continue its physical existence upon one's property is as much property as is the right to have the hills or forests remain in place. . . Such flow and use belong to the land through which it passes, as an incident, convenience, or easement which inseparably connects itself therewith as a part thereof, and frequently gives or adds value thereto; and is a private property right in the proprietor thereof within the protection of the constitutional provision that private property shall be forever held inviolate, subject to the public welfare, and shall not be taken for public use without compensation being first made. The property, therefore, consists, not in the water itself, but in the added value which the stream gives to the land through which it flows. This is made up of the power which may be obtained from the flow of the stream, from the increased fertility of the adjoining fields because of the presence of the water, and of the value of the water for the uses to which it may be put. The right to the continued existence of these conditions is property, to protect which the owner may resort to any or all the instrumentalities which may be employed for the protection of private property rights." If the defendant by an unreasonable use of the water diminished the supply to which the plaintiffs were entitled at all times, or from 6 p. m. until 1 p. m. detained and withheld from the plaintiffs the water which they were entitled to use, this was an illegal invasion of the plaintiffs' property rights. The shutting down of the gates in the defendant's dam every day at 6 p. m., thereby causing this detention, was a positive tort. We think the court committed error in giving the charges complained of. This charge was of harmful effect to the plaintiffs, in view of the testimony

in the case. One of the plaintiffs testified: "If we had have provided a storage-dam we would have had water all the time. If we had the money that they did, we would have built a storage-dam." One of the defendant's witnesses testified: "If Price built a storage-dam, he would have storage enough to run until this reached him. If it was not for Price's large wheels I think he could run anyhow, all the time, as a good many streams run in there." Another one of the defendant's witnessess testified: "The water that runs in from the creeks and branches, with a tight dam he would have enough water to run ½ a day; we have tested it. He could run till our water got there. . . With a good dam, I should think they could run all the morning till the water got there; run a good deal more than they have." In view of this and other testimony in the case, the charge complained of was error of such harmful effect as to require a new trial. If the defendant made an unreasonable use of the water so as to damage the plaintiffs, it was an illegal invasion of their property rights and a continuous and positive tort, and the plaintiffs could recover whatever damages they sustained, even though by the exercise of ordinary care and diligence they could have avoided the same. In this connection, see Brown v. Dean, 123 Mass. 255; McCarty v. Boise City Canal Co., 2 Idaho, 245 (10 Pac. 623); Gilbert v. Kennedy, 22 Mich. 117, 132-134.

4. Complaint is made in the motion that the charge of the court was such as not to inform the jury that the plaintiffs were entitled to nominal damages, even though they suffered no actual damage, if there was an illegal invasion of their rights. If there was on the part of the defendant an illegal invasion of the property rights of the plaintiffs, the latter were entitled to recover nominal damages, even though they proved no special damage. White v. East Lake Land Co., 96 Ga. 415, 417 (23 S. E. 393, 51 Am. St. R. 141); Ellington v. Bennett, 59 Ga. 286; Hendrick v. Cook, 4 Ga. 241; Gould on Waters, §214, p. 4221, 2 Farnham on Water and Water Rights, §510, p. 1674.

5. Complaint is made of the following charge of the court: "On the other hand I charge you, if the dam did not result in the diminution of the supply of water for mill purposes, then plaintiffs can not recover." It is contended by the plaintiffs that this charge excluded the theory of the plaintiffs that they were

entitled to recover for an unreasonable detention of the water, even though the quantity was undiminished. Plaintiffs complained that the water in the stream was diminished by evaporation, ab-- sorption, and percolation, and that the water was unreasonably detained by defendant, so that plaintiffs did not have sufficient water to operate their mill from six p. m. to one p. m. The words employed in the charge complained of, namely, "diminution of the supply of water for mill purposes," were not explicit enough to *clearly* embrace the contention that the supply was entirely cut off from six p. m. to one p. m.; but in view of the rest of the charge of the court, clearly setting forth the right of the plaintiffs to recover because of any unreasonable detention of the water, we do not think the jury misunderstood the meaning of the court's charge, considered in its entirety. We think, however, it would have been better to have more clearly expressed the contention of unreasonable detention, in the charge of which complaint is made.

Complaint is also made of the charge wherein the court told the jury the plaintiffs were not entitled to recover, when he should have stated they were entitled to recover. In view of the rest of the charge and what occurred between the court and counsel in refer- ence to this mistake, it was not such error as to require a new trial.

Complaint is also made of the charge, set forth in the amend- ment to the motion, that if the rules of the defendant in the opera- tion of its machinery, and in turning on and shutting off the water, were reasonable, "in the light of the law I have given you in charge," and damage resulted to the plaintiffs by reason of the enforcement of such rules, such damages should not be recovered. Movants complain of this charge, because it fails to state that such "rules must be reasonable relative to the rights of the plain- tiffs, as well as to the rights of the defendant." The use of the water of a stream by one riparian proprietor must be reasonable with reference to the rights of other riparian proprietors. We do not think the charge complained of created on the minds of the jury any impression that this was not the law, in view of the words therein employed, "in the light of the law I have given you in charge," and in view of the rest of the charge, which plainly informed the jury that the use of the water by one proprietor must be reasonable with reference to the rights of other proprietors.

*Judgment reversed. All the Justices concur.*

LUMPKIN, J., concurring specially. I concur in the judgment rendered in this case, but I can not concur in all the reasoning by which that result is reached. Especially is this true as to the third division of the opinion. "The owner of a mill, whose dam and machinery are suited to the size and capacity of the stream, has a right to the reasonable use of the water to propel his machinery, but he must detain it no longer than is necessary for its profitable enjoyment, and he must return it to its natural channel before it passes upon the land of the proprietor below." *Pool* v. *Lewis,* 41 *Ga.* 162 (5 Am. R. 526). Every dam necessarily impedes to some extent the flow of the water. There is some evaporation from every mill-pond. If the temporary and reasonable detention of water for the purposes of generating power to operate the mill constitute a positive tort, the result would be paralysis to the manufacturing interests of the State, which can not operate without some detention of water, and consequent loss by evaporation. If the owner of the mill has a right to detain the water reasonably for its profitable enjoyment, the mere allegation that he detained it longer than was reasonable would not constitute a case falling within the class of "positive and continuous torts" referred to in the Civil Code, § 3802, which would free the lower mill owner from any necessity or duty to use ordinary care. Whatever those words may mean, I do not think that they apply to a case where a person has a right to do a thing reasonably (the thing itself being right, if reasonably exercised), because of a charge that the right was unreasonably exercised. The unreasonable exercise of a right more nearly approximates negligence than the commission of a positive, direct, or wilful tort. If unreasonable exercise of a right is to be classified rather with negligent torts than those which the code calls "positive and continuous," unquestionably the rule which requires the exercise of ordinary care on the part of the person claiming to be injured in order to lessen the damages applies. This is quite different from a case where water is actually backed upon the land of another or caused to overflow his land. Such cases present instances of a direct invasion of the land itself. A person trespasses upon land as much by backing water upon it as he does by entering upon it himself. Thus, in the case of *Athens Mfg. Co.* v. *Rucker,* 80 *Ga.* 291 (4 S. E. 885), it was said: "If this company raised their dam, thereby

causing water in the creek to run over plaintiff's land, and thereby injuring and damaging him, that was an invasion of his rights, and was a positive act on the part of the .defendant, and not a case of negligence." In *Satterfield* v. *Rowan*, 83 *Ga.* 187 (9. S. E. 677), the tortious act complained of was committed by carrying dirt and ore from a mine and washing it in a stream which flowed through the land of other parties, thus producing continued adulteration of such water. The adulteration of a stream, thereby carrying upon the plaintiff's land foreign substances, or deleterious matter, is quite different from the detention of water for mill purposes, though claimed to be unreasonable. The plaintiff here does not complain as a mere riparian proprietor, using the water in the natural flow of the stream for ordinary uses, but as a mill owner of the hydraulic power capable of propelling machinery. He is not suing for damages resulting from a general depreciation in value of land by having water taken from it, but for injury to his mill and the water privileges connected therewith. When he contends that the damages which he has suffered have resulted from the conduct of the defendant, certainly it would be competent to reply by showing that they resulted, not from the conduct of the defendant, but because the plaintiff had built no dam for the purpose of running his mill, or that he had built a totally insufficient dam for that purpose, or that he had allowed his dam to rot down, or that he had permitted a hole to exist in it through which the water escaped, when, if he had built the dam or repaired it or stopped the hole, he would not have been damaged. In other words, it is competent to show that the damage resulted, not wholly or partly from the plaintiff's conduct, but wholly or partly from the defendant's conduct; or that it was not the defendant's dam which caused the damage, but the hole in the plaintiff's dam; and that if he had exercised ordinary care, he would not have suffered the injury on account of which he complains. In *Grant* v. *Kuglar*, 81 *Ga.* 637 (8 S. E. 378, 3 L. R. A. 606, 12 Am. St. R. 348), it was said that sections 2227, 2231, 2232, 3018 of the former code (but erroneously printed 2327, 2331, 2332, referring to what is now embodied in sections 3057, 3061, 3062, and 3879 of the Code of 1895) made no substantial change in the common-law rights of landowners, with respect to ditching out and protecting their property. And see *White* v. *East Lake*

*Land Co., 96 Ga.* 417 (23 S. E. 393, 51 Am. St. R. 141) ; Coldwell *v.* Sanderson, 69 Wis. 52 (28 N. W. 232, 33 N. W. 591).

I am authorized to state that Mr. Justice Atkinson concurs with me in the views above expressed.