### HODGES *v.* PINE PRODUCT COMPANY.

The plaintiff brought suit against the defendant, making, among other allegations, substantially the following: The defendant is engaged in a certain business, in the operation of which it discharges into a ditch water which flows into a creek running through a tract of land owned by the plaintiff, part of which is used as a pasture. The water thus discharged is poisoned with gases and chemicals extracted from pine wood, and the water in such stream is thereby polluted and adulterated, rendering it unfit for the stock of the plaintiff to drink, and causing to the plaintiff damages in specified ways. *Held:*

1. The adulteration of such stream by artificial means constitutes an invasion of the property rights of the plaintiff, for which he is entitled to nominal damages, even though he shows no special damages.

2. If one by artificial means pollutes the water in the stream on land of another, whereby the fishing privileges of the latter of a pecuniary value are destroyed or injured, he is entitled to recover damages.

3. If, by reason of the conduct of the defendant in polluting the stream, the land was rendered unfit or less valuable for use as a pasture, or

other purposes for which it was adapted with the stream running through it unpolluted, in the absence of other items of special damages the measure of damages of the owner would be the diminution in the market value of the property, if the injury was of a permanent nature; or the diminution in the rental value, if the injury was of a temporary nature.

SEPTEMBER 23, 1910.

Action for damages. Before Judge Rawlings. Tattnall superior court. April 6, 1909.

*W. T. Burkhalter* and *Hines & Jordan,* for plaintiff.

*O'Byrne, Hartridge & Wright* and *H. H. Elders,* for defendant.

HOLDEN, J. The plaintiff brought suit against the defendant for damages, making, among others, substantially the following allegations: Defendant is engaged in the business of extracting from wood, at its plant, "rosin, turpentine, creosote, etc., including all the poisonous gases and chemicals contained in pine wood." From an artesian well the defendant pumps every day thousands of gallons of water, which is discharged into a ditch used to convey the water into Cedar creek. "The said poisonous gases and chemicals extracted from the said wood contaminates the said artesian water as used and discharged from further service in said plant and let flow by said defendant into a ditch and over lands and on into Cedar creek." Cedar creek runs through a described tract of land of 1,000 acres, more or less, owned by the plaintiff, and is "especially adapted for fishing and water for the stock of petitioner." Prior to the conduct of the defendant complained of, the plaintiff had fenced this tract of land. "Your petitioner is a sheep owner and stock raiser, and had this pasture especially prepared for his stock, consisting of sheep, cattle, hogs, goats, etc.; that their dependence for water was in said creek. Petitioner alleges and shows to the court that the said poisonous waters from defendant's plant has already destroyed all the fish in said stream. That your petitioner has no way to water his said stock in said pasture, because the said waters in the said creek have been poisoned by the said defendant. . . Your petitioner shows to the court that the said contaminated poisonous waters kills vegetation and some trees." "That the said tract of land has been further damaged by the said poisonous waters, in the opinion of this plaintiff, by the said waters killing some of the small growth and timber and grasses growing thereon," and an offensive odor comes from the stream. Other allegations of the petition will be

hereinafter stated. To the order of the court sustaining the general and special demurrers of the defendant, and dismissing the petition, the plaintiff excepted.

1. While the petition was subject to some of the grounds of special demurrer, as will be hereinafter pointed out, we do not think it was subject to general demurrer. The Civil Code, § 3879, provides: "The owner of land is entitled to the free and exclusive enjoyment of all watercourses, not navigable, flowing over his land; and the diverting of the stream, . . or the adulterating thereof so as to interfere with its value to him, is a trespass upon his property." § 3057 provides: "Running water, while on land, belongs to the owner of it, but he has no power to divert it from the usual channel, nor can he so use or adulterate it as to interfere with the enjoyment of it by the next owner." And § 3061 is as follows: "The owner of a stream not navigable is entitled to the same exclusive possession thereof as he has to any other part of his land; and the legislature has no power to compel or interfere with him in its lawful use, for the benefit of those above or below him on the stream, except to restrain nuisances." A private nuisance gives a right of action to the person injured thereby, and the fact that the act may be otherwise lawful does not keep it from being a nuisance. See Civil Code, §§ 3858-3861. Any unlawful interference by one with the enjoyment by another of his private property gives a cause of action. Civil Code, § 3874. In 2 Farnham on Water and Water Rights, § 462, pp. 1565, 1566, it is said: "The right to have a natural watercourse continue its physical existence upon one's property is as much property as is the right to have the hills or forests remain in place. . . Such flow and use belong to the land through which it passes, as an incident, convenience, or easement which inseparably connects itself therewith as a part thereof, and frequently gives or adds value thereto; and is a private property right in the proprietor thereof within the protection of the constitutional provision that private property shall be forever held inviolate, subject to the public welfare, and shall not be taken for public use without compensation being first made. The property, therefore, consists, not in the water itself, but in the added value which the stream gives to the land through which it flows. This is made up of the power which may be obtained from the flow of the stream, from the increased fertility of

the adjoining fields because of the presence of the water, and of the value of the water for the uses to which it may be put. The right to the continued existence of these conditions is property, to protect which the owner may resort to any or all of the instrumentalities which may be employed for the protection of private property rights." According to the allegations of the petition, the defendant, in the operation of its plant, was continuously adulterating the waters of the stream passing through the land of the plaintiff, and the plaintiff was entitled to recover whatever damages he sustained by reason thereof. *Horton* v. *Fulton,* 130 *Ga.* 466 (60 S. E. 1059) ; *Satterfield* v. *Rowan,* 83 *Ga.* 187 (9 S. E. 677) ; *Price* v. *High Shoals Mfg. Co.,* 132 *Ga.* 246 (64 S. E. 87, 22 L. R. A. (N. S.) 684) ; Parker *v.* American Woolen Co., 195 Mass. 591 (81 N. E. 468, 10 L. R. A. (N. S.) 584; Bowling Coal Co. *v.* Ruffner, 117 Tenn. 180 (100 S. W. 116, 9 L. R. A. (N. S.) 923, 10 Am. & Eng. Ann. Cases, 581). There was an illegal invasion of the property rights of the plaintiff, and he was entitled to recover nominal damages, if he sustained no special damages. *Price* v. *High Shoals Mfg. Co.,* supra.

2. The pollution of a stream by one riparian owner so as to pollute the water as it passes through the land of a lower riparian owner gives a right of action to the latter. If no measure of damages is furnished beyond the mere commission of the tort, nominal damages may be recovered. In the present case there is no allegation of diminution of market value of the land, or of its rental value. The only suggestion in that direction is an allegation that the plaintiff has been damaged in being deprived of the use of his pasture at least $100 a year. This is not a sufficient allegation as to rental value. The plaintiff relies upon items of special damages sought to be set up by him. One of these is comprised in allegations to the effect that the fish in the creek which passes through the plaintiff's land down to its mouth at the river had been totally destroyed, and that the fish in the river had been practically destroyed; also that the plaintiff had been deprived of his fishing privileges in the creek passing through his land, which he had enjoyed all his life and which had been valuable to him, and that thereby he had been damaged the sum of $300. This allegation also states that the privilege was valuable to him, his family, and his settlement. Of course, the statements of value to his family and

his settlement are wholly irrelevant and furnish no ground for recovery. The allegation is also imperfect in not distinctly alleging the value of the fishing privilege owned by the plaintiff; but the demurrer does not rest on either of these last two points.- While, therefore, the allegation is imperfect, it amounts to a statement that the plaintiff owned a fishing privilege in the creek passing through his land, which had a pecuniary value; that this had been destroyed by the conduct of the defendant; and that the plaintiff had been damaged in the sum of $300. Game running wild upon the plaintiff's land is not owned absolutely by him, and fish swimming in a stream running through his land are not his absolute property. He can not recover the value of fish destroyed in the stream, or game killed on the land, by reason of the pollution of the stream, but a fishing privilege shown to have a pecuniary value is a property right, for the destruction of which damages are recoverable. As against the demurrer filed, it was error to strike the allegations on the subject of the plaintiff's fishing privilege and its destruction or injury by the defendant. As the plaintiff alleged an injury to his fishing privilege of pecuniary value, the allegation that the fish in the stream on his land were destroyed should not have been stricken. See, in this connection, 9 Cyc. 988-991, 1000; 32 Am. Dig. "Fish," § 11. There was no allegation that there was any injury to or destruction of plaintiff's hunting privileges of any pecuniary value, and the allegation that game was destroyed should have been stricken. The demurrer admitted the facts alleged, for the purpose of the argument: what the evidence may show will develop on the trial.

3.   The petition also alleged: "Your petitioner shows that he has been actually damaged the costs of building his said pasture fence around the said 1,000 acres of land, in the sum of $500, or some other large sum. Your petitioner further shows that in addition to this damage he has been damaged in being deprived of the use of said pasture at least $100 a year, and this damage is a continuous one. That the said damage in being deprived of the use of said pasture will amount to at least $1,500." The demurrer to this paragraph should have been sustained, as the damages alleged were not such as were recoverable. The measure of his damages would not be the expense he incurred in building a pasture fence, as the pasture fence was not destroyed or injured by the pollution

of the stream, nor would his measure of damages be the actual value of the pasture to him during any period. If, by reason of the conduct of the defendant in polluting the stream, the land was rendered unfit or less valuable for use as a pasture, or other purposes for which it was adapted with the stream running through it unpolluted, in the absence of other items of special damages, the measure of damages of the owner would be the diminution in the market value of the property if the injury was of a permanent nature; or the diminution in the rental value, if the injury was of a temporary nature.    See Munci Pulp Co. v. Keesling, 166 Ind. 479, 76 N. E. 1002, 9 Am. & Eng. Ann. Cases, 530), and authorities cited in the note on page 534.

It is also alleged: "That the evaporation of the said waters from the said creek contaminated by the said poisonous gases and chemicals give out an odor in vapor when said stream is drying, or the waters evaporating, that is indeed offensive. Your petitioner shows to the court that the said contaminated poisonous waters kills vegetation and some trees." These allegations were too general in their nature, and were properly stricken on special demurrer. The petition further alleged: "Your petitioner shows that the said defendant operates its plant on Sunday in disregard of the laws of God and man and setting an example to the said town of Collins to the injury of the morals and good citizenship of the inhabitants of that community, and especially the young boys therein." The demurrer to this allegation on the ground that it was irrelevant and set up no liability "as against this defendant in favor of said plaintiff" should have been sustained. The fact that the conduct of the defendant operates "to the injury of the morals and good citizenship of that community, and especially the young boys therein," however reprehensible from a moral standpoint, gave to the defendant no legal right to damages because of such conduct, nor did the facts alleged illustrate any question involved in the case.

The allegation that the plaintiff was entitled to punitive and exemplary damages because of the destruction of the fish in the stream should have been stricken on demurrer, as there were no allegations in the petition entitling the plaintiff to recover damages of this nature.

The petition alleged: "Your petitioner further alleges and shows

that the said defendant first turned its said poisonous waters down alongside the Seaboard Air-Line right of way, and got into trouble by reason of the injury they were doing said parties, and the said defendant changed its said poisonous waste waters into Cedar creek to avoid the trouble damages they had incurred on themselves by turning water down alongside the said Seaboard Air-Line Railway. Your petitioner shows that the said defendant has no regard for the rights of other folks or the welfare of the people, and especially your petitioner." These allegations were demurred to on the ground that they were irrelevant, and the demurrer should have been sustained. Proof of these allegations would give the plaintiff no right to damages, and would illustrate no question involved in the case.

The third paragraph of the petition was not subject to the demurrer filed thereto. The thirteenth paragraph of the petition was subject to the demurrer filed thereto, and should have been stricken.

*Judgment reversed. All the Justices concur.*