## 49620. WRIGHT v. LOVETT et al.

EBERHARDT, Presiding Judge.

Plaintiff brought this action for damages to her property in the amount of $5,000 allegedly caused by defendants' wrongful acts in altering the flow of a stream which passed through the properties of both plaintiff and defendants. In her complaint, plaintiff alleged that her property had been damaged in two ways: (1) by defendants causing the stream to back up on her property and (2) "the defendants, after releasing said water did change the natural course of the stream causing further and continuing damage to plaintiff's property."

Plaintiff's evidence showed that plaintiff and defendants owned adjoining lots, plaintiff's being slightly higher than defendants', and that a common stream flowed through the backyards of both lots. Plaintiff bought her lot in 1967 and defendants bought theirs in 1969 at a time when the stream was not flowing through its original bed and the stream was full of debris, clogged up, and had diverted its path as it passed through defendants' backyard, as a consequence of which the stream spread out onto defendants' land creating a swampy jungle overgrown with vines, and a breeding ground for mosquitoes. Defendants assert that during heavy rains the diverted stream caused erosion of defendants' backyard "almost up to the patio and up to my driveway."

To remedy the problem, defendants had a contractor "change the creek back to its original flow here straight across the property . . . [W]e had dirt hauled in here to

fill in this after we had all this dug out straight so it would have an uninterrupted flow of water straight through my property, then, of course, we lined the banks . . . with cement blocks and cement to hold the wash." The original stream bed was dug out two feet deeper in some places and four to five feet in other places. Thereafter the stream stayed within its original bounds and flowed straight through the defendants' property.

Plaintiff testified that while the defendants were filling in their land the stream overflowed into her yard, and that after defendants completed rechanneling downstream, the stream banks on her property began to widen from erosion, undermining trees and causing them to lean or fall.

Two other witnesses for plaintiff were a realtor, who sought to establish plaintiff's damages by showing diminution in the value of plaintiff's lot because of erosion of the backyard, and a landscaper who testified as to the existence of the erosion on plaintiff's lot and estimated the cost of repairing the eroded land.

Plaintiff appeals from a judgment entered on a verdict directed for the defendant, enumerating error upon the direction of the verdict. *Held:*

1. A verdict may be directed only when "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. Code Ann. § 81A-150(a); *Kesler v. Kesler,* 219 Ga. 592 (134 SE2d 811); *Powell v. Ferguson Tile &c. Co.,* 125 Ga. App. 683 (6) (188 SE2d 901); *State Farm Mutual Automobile Ins. Co. v. Snyder,* 125 Ga. App. 352 (187 SE2d 878).

2. While plaintiff does not specify her theory of recovery, from the pleadings and evidence it appears to be grounded in tort on Code § 105-1407, which states: "The owner of land through which nonnavigable watercourses may flow is entitled to have the water in such streams come to his land in its natural and usual flow, subject only to such detention or diminution as may be caused by a reasonable use of it by other riparian proprietors; and the diverting of the stream, wholly or in part, from the same, or the obstructing thereof so as to impede its course or cause it to overflow or in-

jure his land, or any right appurtenant thereto, or the pollution thereof so as to lessen its value to him, shall be a trespass upon his property," and its corollary, Code § 85-1301, which states: "Running water, while on land, belongs to the owner of the land, but he has no right to divert it from the usual channel, nor may he so use or adulterate it as to interfere with the enjoyment of it by the next owner."

These Code sections contemplate a right of recovery for persons whose property is affected by a defendants' detention or diminution of water flowing to a lower riparian owner's land (*Stoner v. Patten,* 136 Ga. 483 (71 SE 802); *Price v. High Shoals Mfg. Co.,* 132 Ga. 246 (64 SE 87); *Southern R. Co. v. Cagle,* 24 Ga. App. 93 (100 SE 21)) or by a defendant's diversion of the watercourse onto the lower riparian owner's land (*Sweetman v. Owens,* 147 Ga. 436 (94 SE 542); *Georgia R. &c. Co. v. Bohler,* 98 Ga. 184 (26 SE 739); *Grant v. Kuglar,* 81 Ga. 637 (8 SE 878); *Costley v. Long,* 112 Ga. App. 758 (146 SE2d 153)) or by a defendant's obstruction of the watercourse so as to cause it to overflow onto an upper riparian owner's land (Clemones v. Alabama Power Co. (N. D. Ga. 1966) 250 FSupp. 433; *City of Jackson v. Wilson,* 146 Ga. 250 (91 SE 63); *Ellington v. Bennett,* 59 Ga. 286; *Parrish v. Parrish,* 21 Ga. App. 275 (94 SE 315)) or by a defendant's pollution of the water which flows to a lower riparian owner *(Vickers v. City of Fitzgerald,* 216 Ga. 476 (117 SE2d 316); *Roughton v. Thiele Kaolin Co.,* 209 Ga. 577 (74 SE2d 844); *Hodges v. Pine Product Co.,* 135 Ga. 134 (68 SE 1107)). It may be questioned whether the Code sections contemplate a cause of action by an upper riparian owner for erosion of his land allegedly caused by a lower riparian owner taking steps to put a stream in its original channel, as was done here. We find no authority for such a theory of recovery since erosion is generally thought to occur downhill. Nevertheless, without determining whether plaintiff has a right of recovery under Code §§ 105-1407 and 85-1301 under these circumstances, she has failed to produce any evidence that the defendants' acts had any causal connection to the erosion on her land. Indeed, the testimony of the landscaper, her witness, on cross examination, was that the defendants' acts in

straightening the flow of the stream would tend to *prevent* erosion rather than cause it. Plaintiff, on appeal, speculates that the defendants' acts caused an increase in the velocity of the waterflow as it passed through defendants' land, thereby causing erosion on her land, but such speculation is not evidence upon which the jury could base a finding of causation. In the absence of such evidence establishing causation, and in light of evidence to the contrary, we must agree with the trial court that "there is no testimony as to the cause of the erosion," and a verdict as to this portion of plaintiff's complaint is demanded for defendants.

3. However, there is evidence (plaintiff's testimony) that defendants obstructed the stream during the process of returning the stream to its channel on their property and that the obstruction caused it to overflow its banks on plaintiff's property. Such wrongful act is contemplated by Code § 105-1407. There is no question of the defendants' right to return the stream on their property to its original channel, but they cannot do so in disregard of their duty to prevent the stream from backing up on an upper riparian owner's land. (See cases cited above on obstruction of a watercourse and Code § 85-1301). Nor is plaintiff's failure to prove special damages fatal since plaintiff may recover nominal damages where the overflow is a trespass. See Clemones v. Alabama Power Co., 250 FSupp. 433, supra; *Price v. High Shoals Mfg. Co.,* 132 Ga. 246, supra; *Ellington v. Bennett,* 59 Ga. 286, supra; *Hendrick v. Cook,* 4 Ga. 241.

This phase of the matter should have been submitted to a jury.

*Judgment reversed and remanded. Deen and Stolz, JJ., concur.*

ARGUED SEPTEMBER 5, 1974 — DECIDED SEPTEMBER 25, 1974.

*Cobb, Blandford & Werbin, Bobby L. Cobb,* for appellant.

*Greer, Pollock & Klosik, Frank J. Klosik, Jr., Neely, Freeman & Hawkins, Albert H. Parnell,* for appellees.