70 527
177s 134

# Ferdinand Ribordy v. Bronson Murray et al.

1. APPELLATE COURT PRACTICE—*Enforcement of Rules.*—While the filing of briefs by an appellee after the time allowed is improper and irregular, whether the strict terms of the rule applicable in such cases are to be enforced in any particular case, is a matter within the discretion of the court, and a decree will not be reversed *pro forma* if the court, on an examination of the record, deems it proper to decide the case upon its merits.

2. EQUITY PRACTICE—*Applications for Rehearing in the Trial Court.*—It is not necessary that an application be made for a rehearing in the trial court before an Appellate Court can entertain an appeal from a decree in chancery.

3. DRAINAGE—*The Act of 1889 Construed.*—The construction of independent ditches, by owners of adjoining lands, and the connecting of them together so as to form a continuous system of drainage across the lands of the several owners, by mere acquiescence and without any special agreement or license, will bring the case within the drainage act of June 4, 1889.

4. SAME—*Right to Close Ditches Must be Clearly Established.*—A person filing a bill under the drainage act of June 4, 1889, and asking for an order approving and confirming his action in closing up a ditch which for several years had been carrying off water from the land of adjoining owners, is bound to show a clear legal right, and if upon the allegations and proofs upon his bill there be a reasonable doubt of the right, the order should be denied.

5. SAME—*Right of Owner of Dominant Heritage.*—The owner of the dominant heritage has the right to have the waters accumulating on his land, flow therefrom to the serviant heritage, as freely and unobstructedly as it would do in a state of nature.

6. SAME—*Right of Owner of Dominant Heritage to Construct Ditches.*—The owner of the dominant heritage may make such ditches or drains for agricultural purposes on his own land as may be required by good husbandry, although by so doing the flow of water may be increased in the natural channel which carries the water from the upper to the lower field.

7. SAME—*Filling up Ditches.*—After water has passed through a channel for a number of years, with such force and in such volume as to produce a large ditch, it becomes extremely difficult, if not impossible, to ascertain where the surface originally was, and a court will not sanction the filling up of such a ditch on the assumption that the water would thereafter flow as it did in a state of nature, where such a proceeding would impede and interrupt the natural flow of the water and throw it back upon the dominant heritage.

8. WATER COURSE—*The Term Defined.*—If the conformation of land

is such as to give the surface water flowing from one tract to another a fixed and determinate course so that it is uniformly discharged upon the serviant tract at a fixed and definite point, the course thus uniformly followed by the water in its flow, is a water course, within the meaning of the rule applicable to the subject.

**Bill**, to confirm an alleged right to close a ditch, and cross-bill to compel the removal of obstructions therefrom. Appeal from the Circuit Court of Livingston County; the Hon. CHARLES R. STARR, Judge, presiding. Heard in this court at the December term 1896. Affirmed. Opinion filed June 26, 1897.

TORRANCE & TORRANCE and R. S. McILDUFF, attorneys for appellants.

C. C. & L. F. STRAWN, attorneys for appellees.

MR. JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was a bill in equity, filed by appellant June 30, 1890, against appellee Murray as the owner of the north half of Sec. 22, in township 30 N., R. 6 east in said Livingston county, and also against the commissioners of highways of said township, as having official control and jurisdiction of the highways in said township.

The proceeding was instituted under an act of the legislature approved June 4, 1889, in force July 1, 1889, entitled "An act declaring legal, drains heretofore or hereafter constructed by mutual license, consent or agreement by adjacent or adjoining owners of land, and to limit the time within such license or agreement heretofore granted may be withdrawn." 3 Starr & Curtis, p. 475.

The bill alleges that appellant was the owner of the S. E. ¼ of the S. W. ¼, the N. ½ of the S. W. ¼ and the W. ½ of the S. E. ¼ of Sec. 15, in said township 30, and that immediately south of his land there is a public highway, upon the south side of which, and within twenty years prior to the filing of the bill, said commissioners of highways had constructed a ditch, to a bridge under a highway, connecting this ditch with an open ditch on appellant's land north

of the highway; that appellee Murray, owned the land south of this highway and directly opposite that of appellee, the land of Murray being in section twenty-two of the same town; that said Murray had constructed a ditch on his land to the point directly opposite the bridge under the highway and connecting with the ditch constructed by the commissioners along the highway; that by means of these ditches the water falling on said highway and the lands adjoining, and upon the Murray land, or a part thereof, was carried through these several ditches and discharged into the ditch on the land of appellant with which the highway ditch had been connected; that neither of the appellees had any written authority to discharge the waters from said ditches into the ditch on the land of complainant; that the same had not been constructed for a period of twenty years so as to give a prescriptive right, and that the ditch on the land of complainant was not a natural water course; that complainant exercising his right under the law had closed the ditch on his land opposite the said bridge under the highway, and declared thereby a revocation of any right to the use of the same by appellees. The prayer of the bill is for confirmation of the right of complainant to fill up the said ditch on his land.

The answer of the defendants (appellees) to the bill admitted the construction of the highway ditch, and that on the land of Murray, and their connection with the ditch on the land of appellant, and averred the right to so construct and connect the same, and denied all the other material allegations of the bill.

Appellee Murray filed a cross-bill, the material part of which charged that by the closing of the ditch by Ribordy, the natural flow of the water from his land across Ribordy's was obstructed, and praying that Ribordy be compelled to remove the obstruction and permit the waters to flow through said ditch.

A supplemental bill was filed by appellee Murray, alleging that since the filing of the original bill appellant had filled up twenty rods or more of the ditch on his land north

of the first obstruction, and praying that he be required to remove that, as well as the dam he had first placed in said ditch.

A very large amount of testimony was taken in the case, and upon a final hearing upon the issues formed upon the original bill and the cross-bill and supplemental cross-bill of appellee Murray, which were all heard together as one case, the Circuit Court entered a decree dismissing the original bill for want of equity, at the costs of appellant, and decreeing to appellee Murray the relief prayed by him in his cross-bill and supplemental cross-bill, and perpetually enjoining appellant from obstructing the ditch in question on his own land, and ordering him within sixty days from the date of the decree, to remove the obstructions he had placed in said ditch, or be considered in contempt of court.

The decree also ordered all costs on the cross-bills to be taxed against appellant, and he brings the case to this court by appeal.

A motion has been entered by appellant for a reversal of the decree under Rule 27 of this court, on the ground that appellee's brief was not filed within the time allowed by the court on their application for an extension of time in which to file the same. While the filing of briefs after the time allowed is improper and irregular, and a practice not to be encouraged, yet, whether the strict terms of the rule are to be enforced in any particular case, is a matter within the discretion of the court, and the decree will not be reversed *pro forma* if the court, on an examination of the record, deems it proper to decide the case upon its merits. The briefs being on file before the case was reached for consideration, and no motion having been made to strike them from the files, we have deemed it proper to consider the case upon its merits, and the motion will therefore be denied.

The point is made by appellees that no appeal lies in this case, because no application was made to the chancellor below for a rehearing of the cause. No authority is cited in support of this proposition, and we know of none. Cer-

tainly no such practice prevails in this State. On the contrary, appeals innumerable have been allowed and entertained from decrees in chancery, when no application for rehearing has been made in the court below. We think the point is not well taken.

A further objection is raised by appellees that the bill does not show a cause of action under the statute, in pursuance of which the suit is brought, because it does not allege that the ditches in question were made and connected with the ditch on appellant's land by the mutual license, consent or agreement of the owner or owners of the adjacent lands, so as to make a continuous line upon, over or across the lands of several owners, as provided by the statute. But the third section of the statute provides as follows: "Sec. 3. Whenever drains have been or shall be constructed in accordance with this act, none of the parties interested therein shall, without the consent of all the parties, fill the same up or in any manner interfere with the same, so as to obstruct the flow of water therein; and the license, consent or agreement of the parties herein mentioned need not be in writing, but shall be as valid and binding if in parol as if in writing, and may be inferred from the acquiescence of the parties in the construction of such drain."

We think the evidence shows that for several years prior to the damming up of the ditch on appellant's land, the ditches of appellees had been connected therewith, forming a continuous line of drainage over the lands of Murray, across the highway and over the lands of appellant, and we think the acquiescence of appellant may be inferred from all the circumstances appearing in the evidence, thus bringing the case within the spirit of the statute, upon which we are not disposed to place the narrow construction contended for by appellees. Leaving out of view for the moment the question as to whether the continuous line of ditch in controversy was constructed in a natural water course, or where the water would flow in a state of nature, and assuming that the ditches were constructed to carry water where it would not otherwise flow, we are inclined to hold

that the construction of independent ditches, by adjoining owners of lands, and the connecting them together so as to form a continuous system of drainage across the lands of the several owners, by mere acquiescence and without any special agreement or license, would bring the case within the statute. Our holding is that the allegations of the bill, if proven, made a cause of action for appellant under the statute.

The bill however alleges that the ditch on the land of appellant was not a natural water course, and we think it was incumbent upon him to prove this allegation, to the reasonable satisfaction of the court, before he would be entitled to an order approving or confirming his action in obstructing and damming up a ditch which for several years had been carrying off water from the highway and from the lands of the adjoining owner, Murray. He was seeking to interfere with and break up the order of things which had existed for a number of years prior thereto, and before he was entitled to an order or decree of court confirming or approving such action, he was bound to show a clear legal right. It seems to us the case stands upon the same footing as it would if, instead of bringing this suit after damming up the ditch, he had filed a bill for an injunction against appellees to restrain them from turning the water from their ditches into the one upon his land. And if upon the allegations and proofs upon such a bill there be a reasonable doubt of the right, the injunction would be denied. Wilson v. Bondurant et al., 142 Ill. 645.

In the case just cited it was held that the act of 1889, under which this suit was brought, does not restrict or abridge the rights of drainage as they existed at common law, but that its sole purpose and effect is to enlarge those rights.

The real question in controversy in this case, and the one upon which the great mass of testimony was taken, is as to whether the ditch upon appellant's land was in the natural course or channel through which water, coming though the Murray ditch and the highway ditch, would

find its natural outlet, and through which in a state of nature it would and ought to flow. Upon this question the court below found that the land of appellant was the serviant heritage, and the land of Murray the dominant heritage, and that prior to the filling up of the ditch by appellant, water passed in a course of nature from said dominant to the serviant heritage. The court further finds that so far as the ditch in question formed a continuous line upon, over and across the lands of Murray, the highway and the lands of appellant, it was but a natural water course.

Notwithstanding the labor involved in reading the great mass of testimony taken in the cause, we have carefully done so, and are unable to say that upon the material questions involved the court below came to a wrong conclusion.

We do not deem it necessary to discuss in detail the evidence at length, as it would probably serve no useful purpose, but we think a clear preponderance of it shows, that in a state of nature, there was a gradual flow of water from the lands of Murray on to those of appellant, which in times of high water found its outlet in a northeasterly direction across the lands of appellant, through a swale or series of depressions in the ground, until it finally emptied into Mazon creek, some distance northeast of appellant's lands. It is true there was no well-defined water course, in the sense in which that term is often used, having well-defined banks and a bed, but that was not necessary. If the conformation of the land was such as to give the surface water flowing from one tract to another a fixed and determinate course, so as to uniformly discharge it upon the servient tract at a fixed and definite point, the course thus uniformly followed by the water in its natural flow, is a water course, within the meaning of the rule applicable to this class of cases. Lambert et al. v. Alcorn, 144 Ill. 313.

We think a preponderance of the evidence given by witnesses who knew the land in a state of nature, before it was broken up for cultivation, shows that such a water course existed across the lands of appellant.

Some of the witnesses call it a slough, others a sag, others a gash, still others a swale, and some say there was a depression a rod or a rod and a half wide through which the water flowed on to its outlet. We think the evidence shows that the ditch on appellant's land, and which he has dammed up, runs along in this natural depression and in the line of the ancient water course. There seems to be some doubt as to how this ditch was first started. Appellant testifies there was no ditch there in 1878 when he went to the old country, and that on his return he found some one had plowed a couple of furrows, some thirty-six or thirty-seven rods long, connecting with the highway ditch, and he never could find out who did it. That nothing has ever been done to it since, except that by the action of the water and the cattle it has been deepened and widened, until it is now a ditch eighteen feet wide and three feet deep. The fact that the ditch has been so deepened and widened without human agency would seem difficult of explanation, except upon the theory that it is a natural water course, carrying large quantities of water. The mere plowing of a couple of furrows upon land where water does not naturally flow in considerable volume and amount, could hardly be expected to produce such a result.

But appellant insists that even if it be true that the ditch was located in a natural water course, yet he has the right to fill up to the natural surface of the ground, and this he claims is all he has done.

There is a conflict in the evidence as to the height of the dam. The testimony of the witness D. J. Stanford, county surveyor is, that from different levels taken by him it is shown that the dam is from three to five inches higher than the ground on each side. Other witnesses testify that the dam is a little higher than the surrounding ground.

However the fact may be, we are unwilling to assent to the proposition that if the ditch is in a natural channel or water course, the party upon whose land it is so situated has the right to fill it up to the level of the ground on each side. Such a proceeding would undoubtedly have the

Ribordy v. Murray.

effect to impede and interrupt the natural flow of the water, and prevent its free and natural passage, so that it would be thrown back upon the dominant heritage.

After the water has passed through a channel for a number of years, with such force and volume as to produce a ditch eighteen feet wide and three feet deep, it might be extremely difficult if not impossible, to ascertain what the natural surface originally was, and hence it would be very dangerous to allow the ditch to be dammed up on the assumption that the water would thereafter flow as it did in a state of nature.

There is evidence to show that notwithstanding the dam, the water still forces its way around it and reaches the old ditch in the field beyond. If this be true, it is a physical fact, tending very strongly to show that the dam is placed in a natural water course, and also that it obstructs the natural flow of the water. This appellant had no right to do. The proposition that the owner of the dominant heritage has the right to have the waters accumulating on his land flow therefrom, to the serviant heritage, as freely and unobstructedly as it would do in a state of nature, is so well recognized and understood that it needs no citation of authority in its support.

It may be true, in this case, that the construction of the highway ditch, and the ditches connecting therewith from the Murray land, have increased the volume and flow of water into the ditch on appellant's land, and that it now empties into the same with greater force than it would in a state of nature, but this can not be avoided; it is one of the inevitable results experienced in the drainage and improvement of land, which the development of the country can not always permit to remain in a state of nature. It has therefore frequently been held in this State that the owner of the dominant heritage may make such drains or ditches for agricultural purposes on his own land as may be required by good husbandry, although by so doing the flow of water may be increased in the natural channel which carries the water from the upper to the lower field. Peck et al. v.

Herrington, 109 Ill. 611; Davis et al. v. Commissioners, etc., 143 Id. 9; Lambert et al. v. Alcorn, 144 Id. 313.

This proposition does not seem to be denied by counsel for appellant, but they insist that the evidence shows the ditch in question was not in a natural water course, and that even if it were, appellant had the right to fill it up to the natural surface of the ground. We have already said all we care to say upon the subject of filling up the ditch, and we think the evidence was sufficient to warrant the court in finding against appellant upon the question as to whether or not the ditch was in a natural water course.

It is true that the bridge or culvert in the highway is not at the same place at which it was originally constructed when the highway was first graded. The witness Charles Eastman testified that in 1875 he helped to move the culvert a few rods further west than it was originally built; that appellant assisted in this work, and said that the object of moving the culvert was to make a straight course for the water. If this statement is anywhere denied by appellant, such denial has escaped our observation, and if the witness speaks truthfully and recollects correctly, this would be a strong circumstance tending to show that appellant then recognized the right of the water to flow under the highway and upon his land immediately north of it. On a careful examination of the whole case we are not prepared to say the decree is erroneous. The appellant failed to establish his right to maintain the dam in question, and therefore his bill was properly dismissed. Upon the cross-bill we think appellee Murray was entitled to the relief prayed, and the court properly granted it. We find no error in the decree upon the question of costs. The decree will be affirmed.