### St. Louis Merchants' Bridge Terminal Railway Company v. Johann Schultz.

1. NEW CAUSE OF ACTION—*when additional count does not set up.* In an action for obstruction of a natural watercourse, an additional count does not state a new cause of action where such count alleges that the course obstructed was a natural watercourse where the original count did not so allege, but did describe the course with such particularity that the conclusion could be drawn from the description given that the course in question was a natural watercourse.

2. WATERCOURSE—*when obstruction of, gives cause of action.* The obstruction of a natural watercourse to the injury of a landowner confers a cause of action regardless of the source from which the water in such course is received.

Action on the case for injury to real property. Appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYER, Judge, presiding. Heard in this court at the August term, 1905. Affirmed. Opinion filed March 22, 1906.

B. H. CANBY and ALEXANDER W. HOPE, for appellant.

J. M. BANDY and D. J. SULLIVAN, for appellee.

MR. PRESIDING JUSTICE MYERS delivered the opinion of the court.

This was an action on the case by appellee against appellant to recover damages sustained by appellee occasioned by the flooding of his land and consequent injury to his crops. The suit was brought to the October term, 1898, of the Madison County Circuit Court and, afterwards, by consent of parties the venue was changed to the City Court of East St. Louis. The declaration, containing one count, was filed October 7, 1898, to which the defendant filed a plea of not guilty. The cause was continued from term to term awaiting decision in the Pepper case, a similar action, 84 App. 116. On the 22nd of August, 1904, the plaintiff filed an additional count, to which the defendant pleaded not guilty and the Statute of Limitations, upon which issue was joined. Trial by jury and verdict for plaintiff for $1,412.50. Motion by defendant for new trial and in arrest of judgment were overruled. The plaintiff entered a *remittitur* of $413.50, whereupon the court entered judgment upon the verdict in favor of the plaintiff and against the defendant for the sum of $999, from which the defendant appealed.

By the first or original count, filed October 7, 1898, it is alleged that plaintiff was in possession of the land affected by the flood; that Carr slough along the east side of plaintiff's land was often filled with water which, if unobstructed, would pass through the said slough without damage to plaintiff's premises; that defendant constructed a dam across the slough by means of which "the water which would naturally pass through said Carr slough and from thence into the Mississippi river, was caused to be obstructed, and from that reason did overflow the lands of the plaintiff." The second or additional count, filed August 22, 1904, is as follows:

"And for that, whereas, the plaintiff was on the 1st day of June, A. D. 1897, and for a long time prior thereto had been in possession of, using and occupying the following described real estate, to wit: a parcel of land consisting of 125 acres off of the north end of a certain tract of land known as the Lohr tract, situated on a certain island, known as Carr or Karr island, lying in section 26, town-

554    APPELLATE COURTS OF ILLINOIS.

VOL. 126.] St. L. Merchants' Bridge Terminal Ry. Co. v. Schultz.

ship 3, north, range ten (10) W. 3rd P. M., in the county of Madison and State of Illinois, the said 125 acre tract being bounded on the north by the north line of section 26, on the east by Carr slough, on the west by the Mississippi river and on the south by that portion of the Lohr tract occupied by Gabriel Pepper, which tract of land in question was, at that time, and prior thereto had been used for agricultural purposes by the plaintiff. That along the east line of the above described tract was a natural watercourse known as Carr slough, through which the surface water and drains from the land contiguous thereto, and from the lands eastward and northward of said slough and from the creeks and branches to the northward and eastward thereof were discharged into the Mississippi river and through which watercourse the back water and flood water of the Mississippi river also found their way again into said river without damage to the land aforesaid, and the plaintiff avers the defendant, well knowing the premises aforesaid prior to the time above named, constructed a dam or dike across the said Carr slough about a half mile south of the land occupied and tilled by the plaintiff as aforesaid, thereby causing on, to wit: the date aforesaid the water which would naturally pass off through the said Carr slough into the Mississippi river, to be obstructed, thereby throwing back upon the lands then occupied by the plaintiff as above described, etc."

Prior to and at the time of bringing suit, appellee occupied and farmed the premises described. Carr island is a narrow strip of land lying along the Mississippi river separated from adjacent land by a channel called Carr slough. The course of this channel is from north to south along the east side of Carr island. It is about 200 feet wide with well-defined banks which, above the bridge, are ten or twelve feet high and with an outlet to the river below the bridge. It is a natural watercourse fed principally by the water from a tract of low land next to the river and over which the water spreads when the river is on the rise. Near the south end below the bridge the land is low and the banks of the slough are correspondingly low. When the water is high in the river it spreads out over the lower land, so that the outlet of the slough or point of discharge varies according to the stage of the water. As early as

1872 some obstructions were placed in the slough near its mouth or outlet in low water. They consisted of an old railroad embankment at one point, an old roadway at another, and a fill near an elevator at still another point, all near together. When the river rises these obstructions are submerged by the backwater from below, so that the outlet from the slough and the flow of water into the river is not affected by the obstructions. Appellant's bridge extends east and west across Carr slough, Carr island and the Mississippi river. The dike complained of is an embankment made by appellant in the winter and spring of 1896–7 by filling in with earth under the trestlework supporting the bridge or approach where it crosses the slough. Appellee's land lies about 1400 feet north of the bridge and between the slough and the river. The general lay of the land on that part of the island is almost level inclining slightly to the west and south toward the river. Appellee and others occupying land on the island south of him and to the bridge, had constructed and for many years maintained a levee or embankment along the west of the slough to protect their lands from overflow when the river rose above the natural banks of the slough. Just north of the bridge was an old railroad embankment, extending from Carr slough west toward the river to a slight ridge near the middle of the island. The levees along the west bank of the slough were connected with this old road embankment. Along the middle ridge mentioned and extending north from the old road embankment, about 800 feet, was built a levee to protect the land on the west side of the island, just above the bridge, from overflow water from the east side. The levees on the east side of the island were maintained at the same height as the river bank on the west side, the general lay of the land intervening being two or three feet lower than the river and the top of the levees, constituting a kind of basin with protecting rim entirely around. The dam, dike or embankment complained of, is at a point where the banks of the slough were ten or twelve feet high. About the middle of April, 1897, there

556    APPELLATE COURTS OF ILLINOIS.

VOL. 126.] St. L. Merchants' Bridge Terminal Ry. Co. v. Schultz.

was a rise in the river sufficient to cause the water to enter and flow through Carr slough in a moving current of large volume. The embankment obstructed the flow of water through the slough, caused it to back and rise above the bank and levee on the west side and overflow the lands of appellee and destroying his growing crops and injuring the land prepared for corn.

It is first contended by appellant's counsel that the action was barred by the Statute of Limitations for the reason, as claimed, that the additional count stated a different cause of action from that contained in the original count, and that the filing of the additional count must be regarded as the commencement of the suit. The original count did not allege, in terms, that Carr slough was a natural water-course; but the allegations describing the slough, its location, character and use, the flow and obstruction of water, all considered, were sufficient to identify and particularize a cause of action, the same as that set out in the additional count. The obstruction of water in the slough, "which would naturally pass through it to the river," defines the chief characteristic of a watercourse within the meaning of the law, under which a remedy is sought in this case. Under a general demurrer or after verdict the count is sufficient to sustain an action for obstructing a natural water-course. This, in no wise, conflicts with the opinion of the court in the Pepper case, 84 App. 116. There it was said: "no attempt was made on the trial to prove that Carr slough was a natural water-way. Counsel for appellee, in their brief, admit that it was not proven, and state that the amended declaration contains no such averment, and claim that they proceeded on the theory that the water in Carr slough was surface water and its natural flow was impeded by the embankment constructed by appellant. * * * In such case, without proof that the slough was a natural water-way, the judgment cannot be sustained. Both the declaration and the evidence fall short of averring and establishing that condition of dominant and servient estate necessary to a recovery on the theory that the water was

surface water." It was held that the trial court did not err in refusing to direct a verdict for the defendant, and the cause was remanded for another trial. It was not held in the Pepper case that the declaration was insufficient, under proper proof, to sustain the action if tried on the theory that the slough was a natural watercourse. The additional count in this case does not state a different cause of action so as to subject it to the plea of the Statute of Limitations within the rule applied in Mackey v. Northern Milling Co., 210 Ill. 115, and other cases cited by appellant's counsel. Directly in point is the case of C. & A. R. R. Co. v. Henneberry, 153 Ill. 354, in which it was held that a count for the flooding of land by damming up a "natural depression" states the same cause of action as one which charges the obstruction of a "watercourse", with like result. Under the second point in argument appellant challenges the sufficiency of the proof to maintain material allegations of the declaration, especially as applied to the averments that Carr slough was a natural watercourse, that the water passed through it to the Mississippi river, and that it had a current or flow through a well-defined channel from source to mouth. There is evidence in the record that from the source of the slough to and below the bridge there was a channel 200 feet wide with well-defined banks ten feet high near the dike or dam; that for several months during each year there was a rapid stream of a large volume of water flowing through the channel to the river; and that this had been the condition for more than twenty-five years prior to the building of the dam complained of. Whether the water flowing through the slough came wholly or only in part from the river above the island, the right of land-owners along its course to have it flow unobstructed beyond their premises is the same. Under the evidence it was a natural watercourse within the meaning and application of the law of this State. In Gormley v. Sanford, 52 Ill. 158, the action was for wrongfully obstructing a channel by which, as alleged, the plaintiff's land was drained. The question was made

558    APPELLATE COURTS OF ILLINOIS.

VOL. 123.] St. L. Merchants' Bridge Terminal Ry. Co. v. Schultz.

whether the same law in regard to drainage, which applies to well-defined watercourses, is applicable when the obstruction affects only "surface water, consisting of rain which fell upon the land itself or of snow falling and melting there." The court said: "In our judgment the reasoning which leads to the rule forbidding the owner of the field to overflow an adjoining field by obstructing a natural watercourse, fed by remote springs, applies with equal force to the obstruction of a natural channel through which the surface waters, derived from the rain or snow falling on such field, are wont to flow. What difference does it make, in principle, whether the water comes directly upon the field from the clouds above, or has fallen upon remote hills, and comes thence in a running stream upon the surface, or rises in a spring upon the upper field and flows upon the lower. The cases asserting a different rule for surface waters and running streams furnish no satisfactory reason for the distinction." In line with this decision which has not been overruled or modified, we are of opinion that there is no difference in principle, whether the water flowing through the slough came direct from the clouds, or springs or marsh lands or the river above the island. Though a mere flood channel, as contended by appellant, still under the conditions shown by the evidence and within the doctrine of the case of Gormley v. Sanford, *supra*, it was a natural watercourse, for the wrongful obstruction of which the law affords a remedy. Lambert v. Alcorn, 144 Ill. 313; O. & M. Ry. Co. v. Nuetzel, 43 App. 108; 177 Ill. 134. It is contended by appellant that whatever might have originally been the character of Carr slough it was not an open channel or watercourse at the time of the alleged injury, for the reason that many years before it had been completely obstructed below the bridge by an elevator and old roadway embankment. There was evidence of openings in these obstructions sufficient for the flow of all the water that gathered in the slough when the river was low. It was further shown by the testimony of witnesses undisputed, that when the rise in the river was sufficient to

enter the slough at its source, the backwater from the river below completely submerged the low land at the points where these obstructions were placed, so that the water from the slough emptied into the river above the obstructions. That was the stage of the water and the condition when the dike at the bridge obstructed the water flowing through the slough. The testimony of engineers and a copy of the records kept by the weather bureau at St. Louis were introduced in evidence by appellant to show the highest and lowest stage of water in the river for each year from 1892 to 1900, inclusive, and the daily record for the months of April and May, 1897. It was testified, that the river would not enter the slough until there was a rise of twenty-seven feet. From this daily record it appears, that on May 2, 1897, the water in the river reached thirty-one feet, the highest point that season. It also appears from this record that on April 16th, the day of the injury, the water in the river was only 26.6 feet. One of appellant's witnesses testified, that when the water reached thirty-one feet as it did May 2nd, the river would be above the banks and levees and that all the land on the island would be submerged. Upon this evidence it is contended by appellant that there was no water in the slough on April 16th, the water in the river being below twenty-seven feet, and that the appellee's land would have been overflown and his crops destroyed May 2nd without regard to the bridge obstruction. The difficulty with this contention is, that it conflicts with all the evidence of eye-witnesses as to the facts. That there was a strong current of flowing water in the slough on April 16th, that the water was obstructed and thrown back over the levee that day, that the river did not on May 2nd or at any other time that season overflow the banks of the river on the west side of the island, that the water which overflowed appellee's premises came in over the levee on the west side of the slough above the bridge, and that the overflow, caused by the embankment across the slough, appears from the undisputed testimony of a number of eye-witnesses and in this record must stand as facts fully established.

Complaint is made of the court's rulings in the admission of evidence, the giving of instructions in behalf of appellee and the modifying of instructions offered by appellant. We find no prejudicial error upon which to found this complaint. On the whole the evidence respecting damages was within the rule embodied in appellee's first and appellant's eleventh given instructions. The measure of damages there given is the actual cash value of the crops destroyed. The things considered by some of appellee's witnesses in making their estimate as shown upon cross-examination, were not all proper elements upon which to found an estimate, but there is sufficient in the record to justify the sum allowed in the judgment. We do not think the allowance is excessive. There was a fair trial of the issues between the parties, and under the evidence the judgment should stand. It will therefore be affirmed.

*Affirmed.*