8688. PELHAM PHOSPHATE COMPANY v. DANIELS.

1. The petition alleged a permanent injury to the freehold of the plaintiff, for which damages were sought, and the court did not err in overruling the general demurrer.

2. The special demurrers, not being argued in the brief of counsel for the plaintiff in error, will not be considered.

3. There was evidence to sustain the verdict, and the general grounds of the motion for a new trial are therefore without merit.

4-16. The special grounds of the motion for a new trial are without any substantial merit.

DECIDED JANUARY 21, 1918.

Action for damages; from city court of Camilla—Judge Bush. March 23, 1917. ·

*Pope & Bennet,* for plaintiff in error.

*J. J. Hill, Peacock & Gardner, W. H. Haggard,* contra.

WADE, C. J.   1.· The plaintiff alleged that there was permanent injury to her freehold, on account of the pollution of a natural stream of water running through her lands, caused by the presence in it of various injurious poisonous chemicals and other refuse matter, produced by and coming from a fertilizer plant erected by the defendant at the head or beginning of this stream, at an alleged cost of about $2,000,000, and with a capacity of 30,000 tons of fertilizer per annum, and consisting of two large buildings, each "being from two to four hundred feet in length and from one [to] one hundred and fifty feet wide, built of wood, brick, and cement," and of three large reservoirs or ponds connected therewith, each covering an area of about two acres, and all filled with contaminated water and waste material containing certain acids and other poisonous substances.   The only reasonable construction to be placed upon the allegations of the petition is that the injuries therein complained of will continue as long as the producing cause remains; and, under all the allegations above quoted and referred to, the inference is authorized that a fertilizer plant so largely capitalized, and constructed on such a stable and generous plan, was intended to be and was (so far as could be said of any human enterprise) a fixed and permanent institution, which would be perpetually operated and would therefore continue indefinitely to pollute the stream flowing through the lands of the plaintiff.   The court did not, therefore, err in holding that the petition alleged a permanent injury, and in overruling the general demurrer thereto.

.2.   The various grounds of special demurrer not entirely removed by the amendments to the petition, not being covered by the brief or argument of counsel for the plaintiff in error, must be treated as abandoned.   The following is the only reference thereto

in the brief of counsel: "We earnestly ask the consideration of the exceptions to the overruling of the demurrer. We feel that so far as the special demurrer is concerned, no citation of authority is necessary." "Grounds of error not covered by the brief or the argument of counsel for the plaintiff in error will be treated as abandoned. The general statement in the brief that grounds not referred to or argued are nevertheless not abandoned will not be sufficient to change the rule above announced. Courts of review have the right to expect assistance from counsel by citation of authority or argument, and will be apt to accept the inference that the lack of interest by counsel is due to a conviction of the lack of merit." *Youmans* v. *Moore,* 11 *Ga. App.* 66 (74 S. E. 710). See also *White Sewing Machine Co.* v. *Horkan,* 17 *Ga. App.* 48 (7) (86 S. E. 257); *Muse* v. *Hall,* 18 *Ga. App.* 651 (90 S. E. 222); *Jefferson* v. *City of Perry,* 18 *Ga. App.* 690 (90 S. E. 366); *James* v. *Boyett,* 19 *Ga. App.* 157 (91 S. E. 219); *Rounsaville* v. *Camp,* 19 *Ga. App.* 336 (4) (91 S. E. 446); *Mason* v. *State,* 19 *Ga. App.* 623 (91 S. E. 922); *Mills* v. *State,* 19 *Ga. App.* 623 (91 S. E. 918); *Norwich Union Ins. Co.* v. *Bainbridge Grocery Co.,* 19 *Ga. App.* 171 (9 S. E. 235); *S. A. L. Ry.* v. *Vaughn,* 19 *Ga. App.* 397 (91 S. E. 516); *Central Ry. Co.* v. *Larsen,* 19 *Ga. App.* 424 (91 S. E. 517); *Farkas* v. *Cohn,* 19 *Ga. App.* 472 (2) (91 S. E. 892); *Haley* v. *Covington,* 19 *Ga. App.* 783 (5) (92 S. E. 297).

It has been held that a statement in the brief of counsel that "we insist upon the 4th, 5th, and 6th grounds of the amended motion for a new trial, upon each and all the grounds therein stated," amounts to no argument in support of the grounds referred to, since it affords no assistance to the court in considering them, and the failure to make any further statement in regard to them amounts to an abandonment thereof. *Rounsaville* v. *Camp,* supra.

3. The general grounds of the motion for a new trial do not appear to be insisted upon in the brief of counsel for the plaintiff in error, except for the contention that the evidence does not disclose any *permanent* injury. There was evidence to sustain the allegations of the petition and to authorize the verdict returned.

4. A question at issue being whether the pollution of the stream of water was permanent, proof that a horse belonging to the plain-

tiff drank water therefrom on the plaintiff's premises some time after the institution of the suit, and in consequence soon thereafter died, was relevant, as tending to show the continuing nature of the injury. No recovery was sought for the value of this horse, and the evidence was likewise admissable to sustain the contention of the plaintiff that the polluted water was injurious' to animal life and would prevent the use of the stream in supplying water to hogs, cattle, and other animals raised or pastured on the lands of the plaintiff.

5. The act complained of in this case being a positive tortuous act committed by the defendant in allowing injurious and poisonous chemicals to pollute the water of a stream flowing through the lands of the plaintiff and thereby to produce a continuous adulteration of the plaintiff's water, and not resulting merely from negligence, the plaintiff was not bound to do anything to avoid the consequences arising from the invasion of her right to enjoy her property to its fullest extent. Civil Code, § 4398; *Athens Mfg. Co.* v. *Rucker,* 80 *Ga.* 291 (4 S. E. 885); *Satterfield* v. *Rowan,* 83 *Ga.* 187 (9 S. E. 677); *Price* v. *High Shoals Mfg. Co.,* 132 *Ga.* 246 (64 S. E. 87, 22 L. R. A. (N. S.) 684). There is therefore no merit in the 5th ground of the motion for a new trial, in which error is assigned upon the refusal of the court to permit a witness for the plaintiff to answer, on cross-examination by the defendant, the question "whether the owner of plaintiff's premises could not procure a pure water supply for said farm and premises by boring a deep well, at an expense of $200;" the defendant's counsel stating that they expected the answer to be in the affirmative. Aside, however, from the question whether the injury complained of was such a positive illegal invasion of her property rights as relieved the plaintiff from any legal obligation to avoid or lessen the resulting damages by the exercise of ordinary care, the suit was predicated upon the destruction (for all practical purposes) of a *natural* stream of water; and testimony tending to show how an artificial supply might be obtained in lieu thereof could not furnish a proper measure of damages, especially since the question rejected by the court did not include any stipulation as to the cost of *maintaining* the apparatus or machinery to make such an artificial supply as permanently available as that which had been so long naturally maintained without any expense whatever. Again, the polluted

body or stream of water on the lands of the plaintiff would remain a menace to animal life and would continue to destroy the fertility of the particular soil which it overflowed at certain times, even though a pure supply of water for the use of man and beast should be obtained elsewhere on said lands by artificial means; and the question as propounded took no account of the land rendered unproductive by the pollution of the stream, or of the expense necessary to erect a sufficient barrier to prevent domestic animals, pastured or confined upon the lands of the plaintiff, from drinking the contaminated water of the stream or from coming in contact therewith. However, in addition to what is said above, it appears from the record that the president of the defendant company testified, without objection, that water could be obtained by sinking or boring a well at the cost of two or three hundred dollars; a gasolene engine could be purchased for forty or fifty dollars, and a pump for six or eight dollars; and that the gasolene and oil necessary to run the engine and pump, and to thus procure a supply of fresh water on the plaintiff's farm would cost from ten to twelve dollars per year. Apparently the defendant received from this testimony all the benefit which could have been derived from an affirmative answer to the question rejected by the court; since no evidence was introduced to contradict what was stated by the president of the defendant company, and presumably he made the estimate as reasonable as the facts and his knowledge of the situation would permit him conscientiously to do. It might be further said, that conceding that the corporation would live out its chartered expectancy of twenty years (without renewal), the cost, under this testimony, of boring the well, purchasing the engine and pump, and paying for gasolene and oil would actually exceed the verdict of $445 returned by the jury for injury to the freehold; and this without taking into consideration the further fact that the engine and pump would naturally deteriorate and would have to be repaired or even replaced at intervals, and also without including the cost of the labor necessary to run such engine and pump during that period.

6. The court did not err in rejecting testimony from the president of the defendant company to the effect that since the construction and operation of the fertilizer plant alleged to have caused the damage sued for, the market value of the plaintiff's land had been enhanced. The defendant was a private corporation, not in-

vested with the right of eminent domain, and did not come within the operation of the rule, applicable where a recovery is sought against a municipal corporation for damages resulting from the construction or alteration of bridges and streets, that no damages are recoverable "if the market value of such lot, after the completion of the work and on account thereof, independently *of all other causes* [italics ours], was as much as, or more than, it was before the work was done." *Hurt* v. *Atlanta,* 100 *Ga.* 274 (3) (28 S. E. 65). Besides, in this case the testimony rejected did not definitely assert that the increase in the market value of the plaintiff's land resulted from the erection of the defendant's fertilizer plant "independently of all other causes." The maxim *sic utere tuo ut alienum non lœdas applies,* and one may not invade the property rights of another by the commission of a private tort and plead in defense to an action therefor a benefit accruing to the plaintiff as an indirect result of such invasion.

7. There was no error in excluding evidence as to the relative value of the swamp land actually touched and affected by the polluted water, and the high lands which constituted the remainder of the plaintiff's farm, since the alleged injury was to the entire tract, and was not solely the loss of the swamp lands, in that the reduction in value of the entire property for stock raising and for general farming purposes constituted the principal cause of action. "The property [in the stream], therefore, consists, not in the water itself, but in the added value which the stream gives to the land through which it flows." *Hodges* v. *Pine Products Co.,* 135 *Ga.* 134, 136 (68 S. E. 1107, 33 L. R. A. (N. S.) 74, 21 Am. Cas. 1052). The loss of the stream in this case was alleged to be and was under some testimony a loss to the entire tract.

8. The 8th ground of the motion for a new trial assigns error because a witness, who was asked by the defendant what in his best judgment was the value of the plaintiff's land, and answered "some years back Mr. Eli Adams and I were called upon to appraise it," "was proceeding to state the value they appraised it," when the plaintiff objected to the said evidence and the court ruled it out, no ground of objection being stated. It does not appear, from this ground of the motion for a new trial, what the witness would have testified as to the value fixed by himself and Adams upon the property of the plaintiff when they appraised it, or what

evidence was expected on this subject from the witness. "Grounds of a motion for a new trial complaining of the refusal of the court to allow a witness to answer a certain question of counsel must be complete and must of themselves disclose the expected answer and that the judge was informed of it." *Western & Atlantic R. Co.* v. *Waldrip,* 18 *Ga. App.* 263, 264 (89 S. E. 346). See also *Atlantic Coast Line R. Co.* v. *Henderson Elevator Co.,* 18 *Ga. App.* 279 (2) (88 S. E. 101) ; *Spiller-Beall Co.* v. *Hirsch,* 18 *Ga. App.* 450 (10) (89 S. E. 587); *Hope* v. *Hedgerose Heights Co.,* 19 *Ga. App.* 10 (2) (90 S. E. 731); *Central Ga. Transmission Co.* v. *Storer,* 17 *Ga. App.* 55 (3) (85 S. E. 498); *Riggins* v. *State,* 17 *Ga. App.* 331 (2) (86 S. E. 736). It does not appear that the exclusion of the testimony was harmful to the defendant. Besides, it does not appear when or under what circumstances "the appraisement" made "some years back" was made; and testimony of this witness as to the conclusion reached by his associate, Adams, in regard to the value of the property would have been plainly hearsay, and he was undertaking to testify not as to his own valuation of the property, but only as to the joint valuation fixed upon it by himself and Adams. Elsewhere he testified to his own opinion touching the market value of the plaintiff's land both before and after the alleged injury.

9. There is no substantial merit in the ground relating to the following instruction to the jury: "The plaintiff claims and alleges that the defendant company has permanently damaged her by lessening or destroying the market value of her land, because of the poisoning and contaminating or polluting of the water in said stream and in her well of water and fish-pond." It is contended that this was error (*a*) because there was no evidence to sustain a charge as to permanent injury, and (*b*) because there was no contention on the part of the plaintiff that the defendant had *destroyed* the market value of her land. It is insisted that while the death of the timber on the lands of the plaintiff, if resulting from the pollution of the stream, might be considered a permanent injury, the charge that "plaintiff claims that defendant has permanently damaged her . . because of the poisoning and contaminating or polluting of the water" was not authorized, inasmuch as there was no testimony tending to show that the pollution was permanent. Conceding that the continued pollution of

the stream must depend upon the continued operation of the plant, the evidence disclosing that the defendant corporation had invested $200,000 (though less than the two million *alleged*) in the construction of said plant, which had a capacity of from 20,000 to 25,000 or possibly 30,000 tons per annum, would authorize an inference on the part of the jury that the business was intended to be permanent, and that the plant would be, "humanly speaking," permanently operated, with the resulting continuous pollution of the plaintiff's stream and permanent injury to her freehold. The evidence disclosed that the fish in the plaintiff's pond had been killed, the water in her well rendered unfit to drink, and many trees destroyed along the banks of the stream or where touched by its waters; that one horse and two cows had died from drinking the polluted water; that the galvanized wire-fencing erected across the stream had been eaten up by the acids therein, the grass in her pasture killed wherever the water touched it, and her husband and tenants on her farm made sick by drinking the water. See, in this connection, *Central Georgia Power Co.* v. *Stubbs,* 141 Ga. 172, 185 (80 S. E. 636).

The use of the word "destroying" by the trial judge, in the expression, "by lessening *or* destroying the market value of her land," will not require a reversal. When considered in connection with the entire charge, the jury could not have been misled thereby, but must have understood that a recovery was sought for injuries to the freehold which *lessened* its value, and not for the literal *destruction* of its entire value.

10. Neither will the charge of the court complained of in the 10th ground, that the plaintiff claims and alleges that the condition produced by the defendant "has thereby lessened or absolutely destroyed the market value of plaintiff's premises and entire lands," require a reversal. The court properly instructed the jury as to the measure of damages in such cases, to wit, the difference between the market value of the plaintiff's land prior to the erection and operation of the defendant's plant and the market value thereof after the erection and operation of said plant; and, in the light of the entire charge (as was said with reference to the 9th ground of the motion), the jury could not have been misled. Besides, it is apparent that the jury were not in fact misled, since a verdict was returned for $445 for injury to the lands, whereas if they had

found that the market value of the land had been *destroyed,* a verdict for a far greater amount must necessarily have resulted, under the testimony submitted.

11. The undisputed evidence showed that certain vegetation in and near the stream of water had been killed by its pollution, and that no vegetation would flourish near the stream, and also that certain wire fencing had been destroyed by the acids in the water. The defendant in its answer admitted the presence of chemicals in the stream flowing through the plaintiff's property; but alleged that "the presence of said refuse could hardly be detected at all." It therefore appears that while not absolutely justified by the answer of the defendant, there was no such harmful error in the instruction that "the defendant denies this and alleges that the plaintiff has not been damaged at all, *or in a very small amount,*" as to require a reversal, especially in the light of the *undisputed* evidence as to certain elements of damage, such as the destruction of the fertility of the adjacent land, of fencing, and of trees and other vegetation, and the loss of certain live stock, caused by the poisoned water. Even though the defendant did not in fact "allege" that the plaintiff had been damaged (if at all) "in a very small amount," there was an admission as to the presence of refuse in the water which might have been reasonably so construed; and at all events the evidence as a whole showed some permanent damage, without contradiction, and no harm could have resulted from this inaccurate statement.

12. The instruction that "where a non-navigable stream flows upon, through, and over the land of several persons, all of whom own land adjacent thereto, they all have equal rights in and to the waters which flow or are contained in said stream, to such a stream," was not error for the reason assigned by the plaintiff in error,—that the evidence showed that the body of water contaminated by the defendant was not a "stream," but mere surface water without any well-defined banks. There was testimony from the president of the defendant company that the "stream was flowing" not exceeding nine months in the year, as it was a stagnant "stream" that flowed very slowly, and there was testimony from other witnesses to the effect that the "stream" flowed for at least nine months in the year, and when not flowing there were various holes along its bed or course that contained water. There was

also testimony as to the existence of well-defined banks and a channel. As was said in *O'Connell* v. *East Tenn. &c Ry. Co.,* 87 Ga. 246, 247 (13 S. E. 489, 13 L. R. A. 394, 27 Am. St. R. 246), "a stream may be wholly dry at times without losing the character of a watercourse." It was said in Ribordy *v.* Murray, 177 Ill. 134 (52 N. E. 325) : "A fixed course over which surface water from adjoining land is uniformly discharged at a definite point is a watercourse within the rule prohibiting one from filling up the watercourse so as to impede the flow from the adjoining land, though the course has no well-defined banks and beds." And it was held in Parizek *v.* Hinek 144 Iowa, 563 (123 N. W. 180) : "A swale or depression over which surface-water runs according to the laws of nature is a watercourse though it has no defined banks." Likewise, in Vandalia R. Co. *v.* Yeager, 60 Ind. App. 188 (110 N. E. 230), it is said that where water, after heavy rains and melting snow, is regularly discharged through a well-defined channel which the force of the water has made for itself, the channel is an ancient natural watercourse. See also Town of Bois D'Arc *v.* Convery, 255 Ill. 511 (90 S. E. 666). Our Supreme Court said in *Stoner* v. *Patten,* 132 *Ga.* 178, 180 (63 S. E. 897) : "A stream of water has a defined channel; it has banks, and is very distinct from the percolations of subsurface water, which oozes in veins or filters through the earth's strata." In that case the plaintiff sought to enjoin the defendant from interfering with his alleged riparian rights by diverting a subterranean stream which ran in a well-defined channel to a point where it disappeared under ground, and from thence in a well-defined underground channel to a point on the plaintiff's land, and the question involved was whether the stream which the defendant diverted ran in a well-defined underground channel by an exact course which could be traced to the point where it was alleged to have made its reappearance on the plaintiff's land, or whether the branch or stream on the plaintiff's land was supplied by subsurface percolating water. In this case the injury to the plaintiff would have been just as great if the water polluted by the defendant at its fertilizer plant had gradually oozed through the adjacent soil until it reached the land of the plaintiff and was there contaminated and destroyed, the usefulness of a standing body of fresh water being as great for watering stock and supplying fish-ponds, and kindred purposes, as if it

flowed through an open, well-defined surface channel. However, under some testimony disclosing that there was a stream with well-defined banks, between which the waters flowed during a considerable portion of each year, the court did not inaccurately refer to the body of water on the lands of the plaintiff as a "stream."

13. What is said as to the 12th ground of the motion applies also to the 13th ground, which complains that the court erred in charging that "it is not necessary that the water should flow through said watercourse at all times; it is sufficient if it be a watercourse and natural drainage." There was evidence to authorize this charge, and it was not erroneous. See *O'Connell* v. *East Tenn. Ry. Co.*, supra.

14. There is no such merit in the 14th, 15th, 16th, 17th, 18th, 19th, and 20th grounds of the motion for a new trial as to require a reversal, though there are some slight verbal inaccuracies in the instructions complained of therein. Viewed in the light of the entire charge and in connection with the record as a whole, no harm could have resulted to the defendant from the alleged errors; and the various points raised by these special exceptions are not of such importance or of so novel a character as to require any more specific reference thereto.

15. The court did not err in declining to charge that "where a party seeks to prove in court any facts by circumstantial evidence, the circumstances must be such as to exclude every other reasonable hypothesis than the one contended for by such party, by a preponderance of the evidence." Contentions may be proved as well by circumstances as by direct testimony, and in a civil case the plaintiff is only required to establish his contentions by a preponderance of the testimony, and he is not required, even where relying only upon circumstantial evidence, to establish them to the exclusion of every other reasonable hypothesis. The court fully charged the law as to preponderance of evidence, and how the jury might determine upon which side the preponderance was, and likewise charged that the "circumstances must show to an appreciable degree" that the conclusions claimed by the plaintiff were correct.

16. The remaining grounds of the motion for a new trial are without merit, and require no more specific ruling.

*Judgment affirmed. Jenkins and Luke, JJ., concur.*