28953. ATLANTA & WEST POINT RAILROAD COMPANY
v. TRUITT *et al.*

DECIDED JULY 15, 1941.

*Heyman & Heyman, Wyatt & Morgan,* for plaintiff in error.
*L. L. Meadors, P. T. Hipp,* contra.

STEPHENS, P. J. Mabel Truitt as widow, brought suit in behalf of herself and her four minor children, against the Atlanta & West Point Railroad Company, to recover for the homicide of Bob Truitt, the husband and father respectively of the plaintiffs. The petition was in two counts, the first of which was withdrawn by the court during the trial and now need not be considered. The allegations of the second count, on which questions arose, in substance are as follows: that on November 19, 1939, at about 8:15 p. m.,

Bob Truitt was struck and killed by a train of the defendant known as the Piedmont Limited; that at that time the deceased was crossing the defendant's main-line track at a private crossing which was much traveled by the public, the deceased being knocked and dragged by the train fifty or sixty steps along the track; that the engineer and fireman knew that the crossing was much traveled by the public, and the defendant had recognized the same as a crossing by erecting blow-posts at a distance of about 400 yards on either side of the crossing, and by customarily giving signals of trains approaching the crossing by blowing the whistle and/or ringing the bell, but on the present occasion the whistle was not sounded as is required by law; that immediately north of the crossing there are high banks for more than 100 yards on both sides of the railroad, and bushes and trees are thick on the side banks; that the train was traveling at a high and dangerous speed of about 75 miles per hour; that the engine did not have its headlight burning as it approached the crossing, at the time it struck the plaintiff's husband and at the time it reached the crossing; that the engineer and fireman failed to exercise ordinary care on approaching the crossing for the safety and protection of the public; that the engineer stopped the train about one mile south of the place where deceased was killed immediately after the train struck him, and this stop was not accomplished until after the train had reached the peak of a downgrade, and was made as soon as it could be done considering the speed of the train at the crossing; that no report of the killing of the deceased was made to any one that night by the train crew, and his body lay by the side of the track until the following day; that owing to the defective condition of the headlight the engineer should have had his train under more strict control than was ordinarily required, and should have operated it with signals, and at such a rate of speed and with such warnings as would guard the safety of persons lawfully on the crossing; that defendant was negligent in running its train at a high and reckless rate of speed, at a point where it had reason to expect some one to be at the said crossing, in operating the train at a high rate of speed without headlights; in not checking the speed of the train before reaching the crossing; in failing to sound warning of its rapid and noiseless approach by blowing the whistle or ringing the bell; in coasting said train downgrade and approaching the crossing in a noiseless

manner after the defendant had failed to give any warning or notice from the whistle or bell; and that the above acts of negligence were the proximate cause of the death of the deceased.

The plaintiff amended the petition by adding a new paragraph, 16 A, which alleged that the defendant did not have on the locomotive of train No. 33, on the night of November 19, 1939, and on the front of the engine, a standard headlight burning as required by the acts of Congress, but contrary thereto the train had no such light burning. The defendant filed a general demurrer, and a number of special demurrers to paragraph 11 calling for a more particular description of the banks and bushes; to paragraphs 12, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, and separately to each subparagraph of paragraph 28, on the ground that the allegations demurred to were vague, general, and indefinite, and set forth mere conclusions, were irrelevant and immaterial, and did not form the basis for any legal liability against the defendant.

The demurrer to paragraph 11 was met by an amendment. The general demurrer and the special demurrers above set out were overruled by the court. The defendant excepted pendente lite, and now assigns error on the overruling of all the demurrers which were overruled. The defendant filed an answer denying all allegations of negligence, except the fact that the headlight of the engine was not operating, as to which the defendant answered specially. In answer to paragraph 15 the defendant alleged that the locomotive was properly equipped with a good and sufficient headlight, and that the headlight reflector and bulb were all in good condition at the time the train left Atlanta, and the headlight continued to burn until after the train passed Hogansville, the last station before reaching the crossing; that the headlight unaccountably went out after the train passed Hogansville and was within a few minutes of its destination at LaGrange; that the engineer exercising a reasonable judgment decided that it was best to continue his trip to LaGrange as this was the next point where the headlight could be repaired if it had gotten out of order; that the engineer slowed the speed of the train and blew his whistle almost continuously from the time the headlight went out until he passed through the sparsely settled section between Hogansville and the suburbs of LaGrange; that when he arrived at the suburbs of LaGrange he slowed his train still more until he brought the train to a stop at

the passenger station; that although the headlight was not operating for the short space of time before reaching LaGrange, there was a green light on each side of the front end of the locomotive, and these lights, together with the constant blowing of the whistle by the engineer, constituted a sufficient warning and notice of the approach of the train. This part of the answer in relation to the headlight was amended by alleging that the headlight complied with the particulars required by the acts of Congress of February 17, 1911, and March 4, 1915, and rules 29 and 129 as adopted by the Interstate Commerce Commission October 11, 1915. 45 U. S. C. A., §§ 22 et seq. Answering paragraph 21 the defendant alleged that it was true no report was made by the train crew of the killing of Truitt, denied that Truitt was killed by the train, denied that Truitt was on the track ahead of the train which approached the private crossing, denied that Truitt was in dangerous proximity to the track ahead of the train as the train approached the crossing, and alleged that the defendant was advised that Truitt's body was found near the side of the track the next morning but was found several hundred feet south of the crossing, and the condition of the body was such as not to indicate that Truitt had been hit by a train, or if hit by a train it indicated that Truitt had walked into the side of the train and had been knocked off from the side of the train.

The trial resulted in a verdict for the plaintiff. The defendant moved for a new trial on the general grounds, and on several special grounds. The motion was overruled and the defendant excepted.

■ The overruling of the general demurrer is not insisted on in the brief of counsel for plaintiff in error as a ground for reversing the judgment. The special demurrers are directed against isolated allegations of the petition as if they were separate and independent of other allegations in the petition. The petition should be considered as a whole, and each extract demurred to should be considered in connection with the other allegations. Thus the demurrer to paragraph 12 which alleges that the employees failed to blow the whistle or toll the bell to give the deceased warning of their approach to the crossing raises the question of the duty to give warning when approaching a private crossing. Inasmuch as in other parts of the petition it is alleged that the defendant had recognized the crossing by the erection of blow-posts on both sides of it, and

customarily signalling the approach of trains to the crossing, which was with knowledge on the part of defendant and the employees operating the train that the crossing was much used by the public, and also that the train was being run at high speed and in violation of the act of congress with reference to the headlight on the engine, it can not be said there was no duty to give any warning. The same observation applies to the demurrers to paragraphs 14, 17, 18, and 22 to 26 inclusive. The demurrers to paragraphs 19 and 20 on the ground that these allegations were irrelevant and immaterial to any issue in the case can not be sustained. The stopping of the train, and that it could not be stopped within less than a mile, were circumstances which might be considered on the question of whether anything unusual had happened at the crossing and on the question of the speed of the train. Each of the specifications of negligence in paragraph 28 is demurred to on the general grounds stated above. No specific defect is alleged. There may be some inconsistencies among these various alleged acts of negligence or between them and certain other allegations in the petition; but as a general rule a pleading can not be stricken on account of inconsistency. Certainly not, when the inconsistency is not taken advantage of by demurring to it specifically. The demurrer to paragraph 29 is without merit. The allegation that the acts of negligence charged were the proximate cause of the death of the deceased is not subject to demurrer.

Ground 5 of the motion complains of the admission of testimony of a witness (Young) as to a conversation with an unknown negro man which occurred at a place and time near the passing of the train which was alleged to have killed the deceased, in which conversation the man stated that he was going to get some cows from a Mr. Allen who lived on the other side of the railroad from where the conversation took place. On objection to this testimony on the ground that it was irrelevant and immaterial the court admitted it, stating that unless it was connected up and shown that the conversation was had with the deceased the court would rule out the testimony, but if subsequent testimony showed it was the deceased he would admit it as a circumstance to illustrate that the deceased was in that vicinity and was on a certain mission, and to explain his conduct there. This witness also testified that the last time he saw this negro he was going out towards "Uncle Dutch's"

(Mr. Allen's). He was going south, going towards the crossing, and it was about a minute before he, the witness, saw the train pass. By other testimony it was shown that on the morning after this conversation the body of the deceased was found lying about three feet from the end of the crossties at some distance, variously estimated by the witnesses, south or southwest of the crossing. In the present case there were no eye-witnesses to any collision of the train with the deceased, and the plaintiff necessarily had to make out her case by circumstantial evidence. It was competent therefore for the plaintiff to show by the persons who last saw him alive where the deceased was and what he was doing. When an act is material declarations accompanying the act are admissible as part of the res gestæ. Code, § 38-302; *Seaboard Air-Line Ry. Co.* v. *Benton,* 43 *Ga. App.* 495, 496 (18) (159 S. E. 717). It was not error for the court to admit this testimony subject to its being ruled out later if the plaintiff failed to show that the negro with whom Mr. Young talked was the deceased. He testified that the man had on an old blue overall jumper. Other testimony showed that the deceased was wearing a garment of this description on the night in question, and this garment was introduced in evidence. Other testimony confirmed that the deceased had been out looking for cows, and under all the evidence it is inferable that it was the deceased who talked with Mr. Young very shortly before the train passed. Besides, it was incumbent on the defendant to renew its objection to the testimony if there was a failure on the part of the plaintiff to show that the conversation was with the deceased. *Lindsey* v. *State,* 138 *Ga.* 18 (7) (76 S. E. 369). It was not error to overrule this ground of the motion.

■ Ground 6 complains that the coroner of the county was allowed over objection to give his opinion as to how long the deceased had been dead when his body was found. The objection was that the coroner was not shown to be an expert. It was shown, however, that the witness had been coroner for six or eight years. He testified that from his experience he could give an opinion from the condition of the body "whether he has been dead six hours, eight hours, ten hours or twelve hours;" that the body was stiff, and that he would judge he had been dead twelve or fifteen hours. He further said that the jury and the coroner tried to find out how long the man had been dead. Evidently this question would arise

in a great many inquests. The business of a coroner is to inquire into the cause of death, and this often involves the question as to the time of death. A coroner with six or eight years experience should be allowed to give his opinion on such a question for what it may be worth. Furthermore, the record shows that the sheriff was allowed to give his opinion as to the length of time the deceased had been dead when he first saw him. He said: "In my opinion that negro had been dead say anywhere from six to fifteen hours. My better judgment would be he had been dead ten or twelve hours." He also said the body was stiff: "It was pretty rigid at 7:30 or 8 o'clock in the morning." This testimony was not objected to. It was not reversible error, if error at all, for the court to admit the testimony referred to. *Elders* v. *Griner*, 40 *Ga. App.* 649 (2) (150 S. E. 857).

■ Ground 7 complains of the admission of long excerpts from the testimony of the witness Edmondson as to the finding by him near the crossing of certain spots that looked like blood, brains, and fragments of skull, on the second day after the body was found. The objection was on the ground that the discovery of these things by the witness was made two days after the alleged homicide, and there was nothing to indicate that they were there on the morning the body was discovered. This objection goes to the weight of the evidence rather than to its relevancy. The evidence might be weakened by lapse of time, though it was short, but this would not render it inadmissible. The jury and not the court is the proper party to determine the weight of the evidence. This evidence had some probative value, and the court did not err in overruling this ground.

Ground 8 complains of the admission in evidence of certain fragments of bone testified to by Edmondson as stated in ground 7. The objection is the same as that in ground 7, and the same ruling applies to it.

Ground 9 complains that the court admitted evidence of a conversation between a witness and the deceased on the night the deceased is alleged to have been killed. The ruling above made on ground 7 applies also to this ground. In tracing the movements of the deceased shortly before the time the train passed it was competent to show what he was doing and his statements about that.

■ Ground 10 complains that the court excluded the testimony of Wooten to the effect that he discovered the body on the morning

of November 20, and it was his opinion that some part of the train had hit the deceased, and he thought that he had staggered into the side of the train. This statement was a mere opinion or theory of the witness without any facts to base it on, and was properly excluded.

■ Grounds 11, 12, 13, and 14 may be considered together as they all rest on the contention that the court failed to charge specifically as to circumstantial evidence, and in a case resting wholly on circumstantial evidence failed to charge that before the jury could reach the conclusion that the deceased had been hit by train No. 33 at the crossing referred to, the evidence in support of such conclusion must be not only consistent with such conclusion but also inconsistent with every other reasonable hypothesis. In this connection it should be observed that the court charged the jury: "The burden is on the plaintiff to make out her case by a preponderance of the testimony." He also charged: "All the findings of fact including the verdict should be governed by a preponderance of the evidence." He further charged: "By preponderance of testimony is meant that superior weight of evidence upon the issues involved which, while not enough to wholly free the mind from a reasonable doubt is still sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other." He also gave the usual instruction as to the number of witnesses, their interest or lack of interest, etc. It does not appear that any request was made to the court to instruct the jury specifically on the subject of circumstantial evidence. It has been repeatedly held that in the absence of a request to charge as to circumstantial evidence it is not error for the court to fail to charge on that subject. *Cowart* v. *Strickland,* 149 *Ga.* 397 (4) (100 S. E. 447, 7 A. L. R. 1110). In *Pelham Phosphate Co.* v. *Daniels,* 21 *Ga. App.* 547, 557 (94 S. E. 846), followed in *Central of Georgia Ry. Co.* v. *Trammell,* 23 *Ga. App.* 25 (97 S. E. 461), it was held: "Contentions may be proved as well by circumstances as by direct testimony, and in a civil case the plaintiff is only required to establish his contentions by a preponderance of the testimony, and he is not required, even when relying only upon circumstantial evidence, to establish them to the exclusion of every other reasonable hypothesis." The cases cited by the defendant in support of its contention do not go to the length of saying that circumstantial evidence must "exclude

every other reasonable hypothesis," but simply that it must preponderate in favor of the hypothesis of the plaintiff. It was not error to overrule grounds 11 to 14 inclusive.

■ Ground 15 complains that the court failed to charge that if from the evidence the jury reached the conclusion that the deceased came to his death by being struck by train No. 33, but that he was not struck at the crossing, the deceased would be a trespasser and the defendant would not be liable for his death. There was no request to charge this or anything about trespassers, but the defendant contends that the question was necessarily involved in the case. The answer of the defendant in paragraph 20 alleges: "If said Bob Truitt was killed in connection with the operation of a train of defendant on the night of November 19, 1939, the said death was the result of the negligence of said Bob Truitt in trespassing upon the track of said defendant and in staggering into the side of train of this defendant under conditions which would not create any liability for his death on the part of the defendant." Under the pleadings and the evidence there was presented the question whether the deceased, if he was killed by a train of the defendant, was not killed at a crossing but was killed while he was a trespasser. There being evidence from which the jury could have inferred that the deceased, if he was killed by the train, was a trespasser, and it not appearing from the evidence that the defendant ever became aware of the presence of the deceased on or dangerously near its track, the evidence demanded the finding that if the deceased was a trespasser the defendant would not be liable for his death. It was error prejudicial to the defendant for the court to fail to charge, even in the absence of a request, that if the jury should conclude that the deceased came to his death by being struck by a train of the defendant and that he was not struck at the crossing, he would have been a trespasser, and the defendant would not be liable for his death. This failure of the court thus to charge was error requiring the grant of a new trial. The court erred in overruling the motion for new trial.

*Judgment reversed. Sutton and Felton, JJ., concur.*